UNITED INSURANCE CO. OF AMERICA *v.* WALL.

5-2369                                    345 S. W. 2d 927

Opinion delivered May 8, 1961.

*R. D. Smith, Jr.,* for appellant.

*Daggett & Daggett,* by *Carrold E. Ray,* for appellee.

Ed. F. McFADDIN, Associate Justice. Appellant, United Insurance Company of America, seeks to reverse a judgment obtained by appellee Wall on a policy issued to Wall by appellant. On June 3, 1957, for an annual premium of $81.00 paid, the Insurance Company issued to Mr. Wall a policy whereby the Company agreed to pay $100.00 per month, ". . . for loss of time commencing while this policy is in force from sickness originating more than thirty days after the policy date." On January 23, 1958, Mr. Wall became incapacitated because of a circulatory ailment, and as a result both of his legs have been amputated, and he claims total and permanent disability. On February 18, 1960, Wall filed action in the Circuit Court; and the Insurance Company denied liability because it claimed: (1) that Wall had the circulatory ailment before the policy was issued; and (2) that the $81.00 premium had been refunded to Mr. Wall. Trial to a jury resulted in a verdict and judgment for Wall; and on this appeal the Insurance Company urges only two points, both of which relate to instructions.

1. *Modification of Defendant's Instruction No. 2* The Insurance Company requested the following instruction:

"You are instructed that the policy sued on in this action insures against loss of time commencing while this policy is in force, from sickness originating more than thirty days after the policy date, so if you should find by a preponderance of the evidence that the illness with which the plaintiff is afflicted originated before the expiration of thirty days after the policy date, *whether he knew it or not,* then the defendant is not liable and your verdict will be for the defendant."

The Trial Court modified the requested instruction by eliminating the words shown in italics—*i. e., "whether he knew it or not,"*—and gave the instruction as so modified. The Insurance Company complains of the elimination of the italicized words. The evidence established that the policy was issued without a physical

examination. Two representatives of the Insurance Company persuaded Mr. Wall to sign an application on May 1, 1957. The answers were warranties; and the following questions and answers were contained in the application:

"Q. Have you received medical or surgical advice or treatment, or had any local or constitutional disease within the past five years?

A. Yes.

Q. When?

A. April, 1955.

Q. For what?

A. Circulatory system check-up.

Q. Duration?

A. No loss of time."

Mr. Wall gave the name of the two physicians who had treated him and gave permission for them to make disclosures to the Insurance Company. The Insurance Company wrote both doctors and received answers which the Company considered as justifying the issuance of the policy to Mr. Wall. Certainly Mr. Wall made no concealment. The policy was issued on June 3, 1957; and in January 1958 Mr. Wall became disabled because of his circulatory condition resulting from arteriosclerosis. The surgeon who then and thereafter attended him testified that, according to the history Mr. Wall gave him, the circulatory ailment had been in existence in his right leg for approximately eighteen months before January 1958, and in his left foot for approximately one and one-half months before that date. The appellant urges that its policy only insured Wall for, ". . . loss of time commencing while this policy is in force, from sickness *originating more than thirty days after the policy date.*" The appellant says that Wall had the circulatory ailment prior to the issuance of the policy in June 1957, ". . . whether he knew it or not," and that therefore appellant is not liable.

The Trial Court was correct in eliminating the italicized language. In *Home Life Ins. Co.* v. *Allison,* 179 Ark. 65, 14 S. W. 2d 229, in holding that the insured could recover against a similar defense to the one here made, we said: ''Certainly the parties did not contract with reference to latent germs or seeds of disease or illness existing in the body prior to the delivery of the policy.'' Likewise, in *State National Life Ins. Co.* v. *Stamper,* 228 Ark. 1128, 312 S. W. 2d 441, we allowed the insured to recover against a defense such as is here asserted and we cited an annotation[1] in 53 A. L. R. 2d 686, and said:

''. . . the weight of authority is that the sickness should be deemed to have had its inception at the time it first manifested itself or became active, or when sufficient symptoms existed to allow a reasonably accurate diagnosis of the case, so that recovery can be had, even though the disease, germs or infection was present in the body prior to the excluded time, if the condition was latent, inactive, and perhaps not discovered.''

The fact that no reference was made to the presence of arteriosclerosis in the reports of the doctors who had examined Mr. Wall is a strong indication that the disease had not manifested itself at that time sufficiently to indicate a reasonable diagnosis. According to the testimony of the surgeon, practically everyone had arteriosclerosis in some degree but few ever have it as severely as appellee. Therefore, the fact that appellee had experienced some symptoms before the policy was issued was no indication that the disease would advance to a state causing total disability. The Insurance Company was put on notice by appellee in his application that he had been checked for a circulatory condition. The burden was then on the Company to satisfy itself as to his insurability in this respect, and if it issued the policy without having made a sufficient investigation, such is not appellee's fault. The Trial Court committed no error in modifying the instruction as it did.

---

[1] The annotation is entitled, "When sickness deemed to have inception within clause of health or hospital policy covering sickness originating while policy is in force."

II. *Refusal of the Court to Give Appellant's Instruction No. 5.* The evidence established that Mr. Wall's right leg was amputated on February 24, 1958, and his left leg was amputated on April 27, 1958. On April 30, 1958, the Insurance Company returned the $81.00 premium to Mr. Wall and denied liability. Mr. Wall endorsed the draft and it was applied on his hospital bill; and the Insurance Company claimed that such endorsement constituted a full release. The attending physician testified that Mr. Wall was under heavy sedation during all of such time:

"Q. . . . It requires a good deal of time to recover?

A. Yes, they are kept pretty well 'out' for a few days; it is a severe shock; lots of blood transfusions and lots of narcotics involved. I am sure he had quite a bit because he went through a lot.

Q. Based on your experience and recollection, would you say during these times a man would be competent and capable of conducting his own business, carrying on his own affairs and appreciating his legal rights?

A. While he was in the hospital, no. I recall his wife was very much disturbed and he was terribly depressed when he lost his legs and was worried about finances. She talked to me about the possibility of putting him in a nursing home to be cared for; that he wouldn't be capable of looking after his affairs as he normally would."

Along with the foregoing, there was other evidence which made a case for the jury on the issue of when Mr. Wall became capable of transacting his business within the purview of our applicable cases, some of which are: *S. L. I. M. & S. Ry. Co.* v. *Brown,* 73 Ark. 42, 83 S. W. 332; *Bearden* v. *S. L. I. M. & S. Ry. Co.,* 103 Ark. 341, 146 S. W. 861, 107 Ark. 363, 155 S. W. 499; *Trumann Cooperate Co.* v. *Crye,* 137 Ark. 293, 209 S. W. 278; and *Gillenwater* v. *Johnson,* 226 Ark. 400, 290 S. W.

2d 1. At the request of the appellee, and without objection of appellant, the Court instructed the jury:

"You are instructed that if you find from the evidence that the plaintiff, Enoch T. Wall, at the time of the receipt by him of the $81.00 check and the following period up to the time of the filing of this suit was continuously incapable of transacting his own business and recognizing the import thereof, then you are instructed that the acceptance of said check and failure to sooner institute this litigation does not defeat his cause of action."

Then, upon request of the appellant, the Court gave the appellant's requested Instruction No. 4, as follows:

"You are instructed that even if you should find by a preponderance of the evidence in this case that the plaintiff Enoch T. Wall was mentally unable to comprehend the meaning of retaining and executing the draft tendered by the defendant of the return premium, if you find that same was in fact returned and negotiated, by a preponderance of the testimony, then you are further instructed that if you find from a preponderance of the evidence that the plaintiff Enoch T. Wall regained his mental facilities to such extent as to enable him to comprehend and appreciate his normal business affairs, and that he continued thereafter to retain said return premium for an unreasonable length of time after regaining his mental facilities by a preponderance of the testimony, then he will, in law, be deemed to have ratified his prior acts in rescinding said contract and the defendant would not be liable, and your verdict should be for the defendant."

With the jury thus instructed, the appellant then requested its Instruction No. 5, which the Court refused. This instruction is the one now in issue; and reads:

"The defendant in this case contends that there has been a mutual rescission of the contract of insurance between the United Insurance Company of America and Enoch T. Wall in that when proof of loss was furnished

560

the defendant it refunded to plaintiff Enoch T. Wall the premium, which had been paid, accompanied by a letter setting forth the grounds for said rescission and a draft for the amount of the return premium, which was signed and negotiated by the plaintiff Enoch T. Wall. If you should find by a preponderance of the evidence that the defendant mailed the plaintiff the draft for the amount of the return premium together with a letter of explanation thereof, which said draft was retained and negotiated, or applied on his hospital bill, with knowledge of the reason for the return of said premium; then that, in law would amount to a mutual rescission of said contract of insurance, and the defendant would not be liable to the plaintiff in any amount, and your verdict would be for the defendant.''

In refusing the Instruction No. 5, the Court stated that, ''. . . it is covered by other instructions already given.'' We hold that the Trial Court was correct in refusing the Instruction No. 5. We need not decide whether the phraseology in the requested instruction correctly stated the applicable rules because the other instructions did state them, and the Court was under no duty to multiply the instructions.

Affirmed.