OLD EQUITY LIFE INSURANCE CO. *v.* HATTIE MAE CRUMBY

5-4099                                                               411 S. W. 2d 292

Opinion delivered February 13, 1967

*George K. Cracraft Jr.,* for appellant.

*David Solomon,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Hattie Mae Crumby, a 72-year-old widow, purchased two policies of insurance from appellant insurance company on

April 6, 1964. One policy provided hospital benefits, and the other provided reimbursement for medical and surgical expenses. Appellee was not required to take a physical examination prior to issuance of the policies, the company only requesting a statement from appellee that she was in good health, along with a statement of her past medical history. On March 30, 1965, while visiting in Memphis, Tennessee, Mrs. Crumby, at the insistence of her children, went to Sanders Clinic for a general "check-up" and physical examination, her only complaint relating to a condition totally unconnected with the issue in this litigation. During the examination, Dr. Strain observed several tumors[1] on her forehead, and this doctor sent her to another member of the clinic, Dr. Eugene Nobles, for a further examination of the tumors. Dr. Nobles diagnosed these (also termed ulcers) as malignant, the pathology report terming them "basal cell carcinoma," or in "laymen's language," skin cancer. Surgery was performed, and the tumors removed. Mrs. Crumby sought payment of the benefits provided by the two insurance policies heretofore mentioned, but the company declined to pay on the basis that the hospitalization policy provided that the company was not liable for cancer unless that sickness originated after the policy had been in force for three months preceding the date of the origin; as to surgical benefits, the policy provided no compensation due to surgery for cancer, unless the sickness originated six months after the policy had been in force. The company contended that this condition was in existence at the time the policies were taken out by appellee and refused to make payment. Suit was instituted by Mrs. Crumby, and on hearing, the Circuit Court, sitting as a jury, found that appellee was entitled to a judgment against appellant in the amount sued for, $695.00, and was entitled to 12% penalty, a reasonable attorney's fee, interest, and costs. From the judgment so entered, appellant brings this appeal. For reversal, only one point is relied on, *viz*:

---

[1]The record discloses that the growths are referred to both in the singular and plural. Apparently, there were several, one being somewhat larger than the others.

"A disease originates within the meaning of the exclusionary clause of a policy of medical insurance when it becomes active and so manifests itself and displays sufficient symptoms from which a reasonable and accurate diagnosis can be made whether or not the insured is aware of the consequences of these symptoms or has actual knowledge that the disease exists." ·

Both sides rely upon the same cases, each contending the cases strongly support their view. These cases are: *State National Life Insurance Company* v. *Stamper*, 228 Ark. 1128, 312 S. W. 2d 441; *American Insurance Company of Texas* v. *Neal*, 234 Ark. 784, 354 S. W. 2d 741; and *United Insurance Company of America* v. *Wall*, 233 Ark. 554, 345 S. W. 2d 927. In the *Stamper* case, Mrs. Stamper had purchased a similar policy, with a similar exclusion clause. A little over a year after the purchase, she began to suffer pain in her neck and shoulders. At first thinking it was caused by her teeth, she had them extracted, but this did not bring relief. During most of her life, she had had a small bony growth or knot on the back of her head, but had suffered no ill effects whatever from the growth until August, 1955 (fourteen months after the policy had been taken out), when it was determined that this growth had increased in size to the point where it was causing the pain suffered. The company contended that this knot had been present for a long number of years, and it was not liable for surgical and hospital benefits. The trial court held against this contention, and we affirmed. A similar situation was involved in *American Insurance Company of Texas* v. *Neal, supra,* and we likewise affirmed a judgment for the policyholder, citing *Stamper,* and stating:

"The decision in the above case was in line with the decided weight of authority that the condition should be deemed to have had its inception either at the time it became active, or when sufficient evidence existed to allow a reasonably accurate diagnosis even though disease germs, infection, or physical condition might have been present in the body prior to the excluded time if

the condition was latent, inactive, and perhaps undiscovered.''

Likewise, in *United Insurance Company of America* v. *Wall, supra,* a similar exclusion was raised as a defense, it being contended that the policyholder had suffered from a circulatory ailment for a long period of time before the policy was taken out. This ailment finally resulted in Wall's having both legs amputated. On trial, Wall obtained judgment and we affirmed. At once, it is noticeable that in all three of these cases, relied upon by both parties, the policyholder recovered.

The testimony in the case before us consists entirely of that of Mrs. Crumby and the deposition of Dr. Nobles. Mrs. Crumby testified (and none of her testimony is disputed) that the tumors had been on her forehead for a long number of years, but had never given her any trouble. Apparently one had formed from an old scar occasioned by an injury received when she was three years of age. Appellee mentioned consulting another physician six or eight years before the visit to Sanders Clinic, at which time, she showed the growth to that physician (though she was consulting him about another matter), ''and he said that it was all right to leave it alone.'' She stated that prior to her visit to Dr. Strain in 1965, she had had ''No trouble at all. Dr. Nobles said he didn't know whether they would have to be removed until he took X-rays.''

Dr. Nobles testified that he could not say how long the tumors had been malignant, but when asked if he could tell whether the malignancy had reached the point where it might have been diagnosed earlier than March 30, 1965, as cancer, he replied:

''Yes, undoubtedly, if a biopsy had been taken, which is a removal of a small portion of a lesion for pathological examination, the diagnosis could have been made at an earlier time.''

The doctor stated that he was expressing his personal feeling, that he had no idea how long the tumors had been malignant, but when asked if a qualified medical doctor could have made a reasonable or accurate diagnosis of her condition, as much as six months before he (Dr. Nobles) saw her, the witness replied, "I would say this is correct." He further stated, "I feel that this ulcer had become malignant before a year ago. I think that a year prior to her admission here it was malignant at that time." Dr. Nobles also testified that Mrs. Crumby was unaware of any malignancy; that he knew of no previous treatment that she had had relative to this condition. This was all of the proof offered in the case.

Mrs. Crumby's case, in many respects, is really a stronger case for recovery than the three heretofore mentioned. For instance, in *United Insurance Company of America* v. *Wall* (the amputation case), we pointed out that "the fact that appellee had experienced some symptoms before the policy was issued was no indication that the disease would advance to a state causing total disability." In *Stamper,* the policyholder had the small bony growth or knot on the back of her head for a long number of years, and had suffered pain in her neck and shoulders, but thought it was caused by bad teeth. Here, it is undisputed that the tumors had grown on appellee's forehead[2] for a long number of years (the first commencing when she was a child); that they had been viewed by a physician some years before that, the physician finding no cause for alarm, and appellee had never suffered one moment of pain from these growths.

What is meant by the expression that a "condition should be deemed to have had its inception either at the time it became active, or *when sufficient evidence existed to allow a reasonably accurate disgnosis*? (Emphasis supplied) * * *" A reasonably accurate diagnosis by whom? A specialist? A general practitioner? As

[2]These were not at once apparent to a mere glance from other persons, since Mrs. Crumby, as a matter of appearance, had followed the practice of combing her hair over the tumors.

stated, Mrs. Crumby had, some years before, mentioned the matter to her doctor, and in her application for the policies, she had given the name and address of the family physician. It will be, of course, noted that Dr. Nobles' connected with a very fine medical clinic, was only expressing his opinion. Would the fact that Dr. Nobles was able to diagnose appellee's condition mean that *any general practitioner* could have made the same diagnosis, particularly when no discomfort had been caused by the tumors? We do not think that Dr. Nobles' testimony was *conclusive* proof that her condition could, or would, have been diagnosed as cancerous by any other physician.

Here, there is no question of fraudulent or misleading statements. Furthermore, Mrs. Crumby gave the name and address of her physician, and her permission for him to disclose any knowledge or information that he might have relative to her condition. Likewise, she was 72 years of age, an age that might have caused some companies to, at least, check on the state of her health. It might be also mentioned that appellee paid a substantial premium for protection under these policies, approximately $181.00 per year.

Under appellant's contention, an applicant for insurance, in order to feel safely covered by his policy, would have to take a physical examination before applying for insurance—and, of course, even then, some condition might not be properly diagnosed by the examining physician, though some other physician might subsequently state that that condition could have, and should have, been correctly diagnosed at that time.

We are of the view that Mrs. Crumby's testimony that she had never had any pain, nor experienced any difficulty with these growths, nor been advised that the growths should receive attention, constituted substantial evidence to make a jury question of when sufficient symptoms were present to permit a reasonably accurate

diagnosis that the tumors were malignant. The trial court, sitting as a jury, determined that question.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. While it may not have been necessary in reaching the conclusion set out in the principal opinion, I feel that it is appropriate to add that the proper meaning of the word *sickness* in the exclusionary clause of the policy in question here requires some manifestation of a diseased condition which would make one aware of his condition, not just that the condition has originated. There are many definitions of the word *sickness* in cases involving these exclusionary clauses requiring some confinement of the patient or restriction or limitation of his normal work occupation, avocation or activities, or of the normal functions of his body or organs.

A dormant condition (fistula) which existed from birth of an insured until about six months, after a policy was issued has been held not to be a *sickness* which was excluded as a pre-existing one. *Horace Mann Mutual Ins. Co.* v. *Burrow,* 213 Tenn. 262, 373 S. W. 2d 469 (1963).

A hernia discovered before his policy lapsed but which did not cause an insured any pain or inconvenience or prevent him from carrying on his normal activities until after a lapse and reinstatement of the policy but for which he underwent surgery on the advice of his family doctor, was held not to be excluded because it pre-existed the reinstatement. *Old National Insurance Co.* v. *Johnson,* 312 S. W. 2d 715 (Tex. Civ. App. 1958).

The presence of malignant cells in an insured's colon for many months before an application for insurance was held not to exclude him from coverage when

surgery, because of abdominal cancer, was required within two weeks after the expiration of the exclusionary period. *Fuller* v. *Aetna Life Ins. Co.*, 259 F. 2d 402 (5th Cir. 1958).

Many other cases could be cited along these lines. These holdings are not in conflict with the Arkansas cases. While it was said in *State National Life Ins. Co.* v. *Stamper*, 228 Ark. 1128, 312 S. W. 2d 441, that there was an annotation in 53 A. L. R. 2d 687 and that the weight of authority was that the sickness should be deemed to have had its inception at the time it first manifested itself or became active, or when sufficient symptoms existed to allow a reasonably accurate diagnosis of the case, so that recovery can be had, even though the disease, germ, or infection was present in the body prior to the excluded time, if the condition was latent, inactive, and perhaps not discovered, our decisions have turned on the active manifestation of the condition and not on the ability to diagnose.

The *Stamper* case was one which involved a bony growth from childhood of the insured and the decision was based upon the fact that she did not have any condition causing her disability which manifested itself prior to its causing her pain, well after the expiration of the exclusionary period. In *American Ins. Co. of Texas* v. *Neal*, 234 Ark. 784, 354 S. W. 2d 741, the court found that there was a jury question when the condition causing insured's surgery and hospitalization had not given her any trouble until after the exclusionary period. In *United Insurance Co.* v. *Wall*, 233 Ark. 554, 345 S. W. 2d 927, the emphasis was upon the fact that even though the insured had some symptoms of arteriosclerosis before the policy was issued, there was no indication that the disease would advance to a state causing total disability. The cancer of appellee was at least as latent as the condition of the insured in *Home Life Insurance Co.* v. *Allison*, 179 Ark. 65, 14 S. W. 2d 229, where this court held that such a latent condition would not cause a subsequent disability therefrom to be excluded.

We have not applied the "diagnosis" test heretofore and I find scant support for it in the annotation from which it was quoted. It seems that most, if not all, of these cases required that there be a diseased condition known to be such by the insured. Stipulations in insurance policies exempting insurer from liabilty under certain conditions are always construed strictly against the insurer, since such policies are issued on printed forms prepared by experts at insurer's instance and insured has no voice in their preparation. *Benham* v. *American Central Life Ins. Co.*, 140 Ark. 612, 217 S. W. 462. Exceptions and limitations are strictly construed against the insurer. *Washington Fire & Marine Ins. Co.* v. *Ryburn*, 228 Ark. 930, 311 S. W. 2d 302.

I think it is definite that before a sickness can be said to be excluded, there must at least have been sufficient manifestation of it to make the insured seek a diagnosis and that it be of such a nature that a reasonably accurate diagnosis could have been made with reasonable medical certainty. That was not the condition in this case.