LINCOLN INCOME LIFE INSURANCE COMPANY
*v.* CALLIE M. MILTON

5-4153                                                412 S. W. 2d 291

Opinion delivered March 13, 1967

*Crumpler, O'Connor, Wynne & Mays,* for appellant.

*Jabe Hoggard,* for appellee.

GEORGE ROSE SMITH, Justice. This is an action brought by the appellee to recover $125 under a sickness and accident policy. The insurance company contends that the insured's condition existed before the policy

was issued and was therefore excluded from coverage by this clause in the contract: "'Sickness' as used in this policy means sickness or disease which first commences or first becomes evident, after the effective date hereof and which causes loss commencing while this policy is in force." Th trial court, hearing the case without a jury, entered judgment for the plaintiff, finding that she did not know the cause of her physical disorder when she applied for the policy.

There is no real dispute about the material facts. The policy was issued on July 19, 1965, without a medical examination. Mrs. Milton was then 36 years old. In applying for the policy she informed the soliciting agent that she was in good health as far as she knew.

In November, after the issuance of the policy in July, the insured consulted the late Dr. B. L. Moore, Sr., who was practicing medicine with his son. Dr. Moore's records, as explained by his son at the trial, disclosed that the chief complaint was "that she feels bad. The first notation is that her last menstrual period was September, 1964." A vaginal examination and urinalysis were negative. Dr. Moore placed his patient in the hospital for five days, apparently for tests and x-rays. That period of hospitalization resulted in the present claim.

It was found that Mrs. Milton's thyroid gland was underactive, producing insufficient hormones to regulate the bodily functions controlled by the thyroid gland —including the ovarian functions that give rise to menstruation. Dr. Moore prescribed thyroid pills. With that medication the patient's menstrual periods began again in December and were found to have continued normally when she was examined some seven months later by Dr. Moore, Jr.

Among the cases discussed by counsel these two bear most directly upon the issues now presented: State Nat. Life Ins. Co. v. Stamper, 228 Ark. 1128, 312 S. W.

2d 441 (1958), and *American Ins. Co. of Texas* v. *Neal*, 234 Ark. 784, 354 S. W. 2d 741 (1962). Each case affirmed a judgment for the plaintiff. In the Stamper case the insured, during most of her life, had had a small bony growth on the back of her head. It caused no trouble until more than a year after the issuance of the policy sued upon. The growth then increased in size and gave rise to the hospital and medical expenses incurred by the plaintiff. In sustaining the trial court's judgment for the insured we said that "the weight of authority is that the sickness should be deemed to have had its inception at the time it first manifested itself or became active, or when sufficient symptoms existed to allow a reasonable accurate diagnosis of the case, so that recovery can be had, even though the disease, germs or infection was present in the body prior to the excluded time, if the condition was latent, inactive, and perhaps not discovered." That case was followed, on similar facts, in the *Neal* case, *supra.* See also *Old Equity Life Ins. Co.* v. *Crumby*, 241 Ark. 982, 411 S. W. 2d 292 (1967).

In those cases, and in many others to the same effect, the insured had some supposedly trivial infirmity or abnormality when the policy took effect. Later on, however, the condition changed for the worse and for the first time either actually became, or became diagnosable as, a sickness or disease falling within the coverage of the policy. The insured's right to protection under the contract was properly upheld.

The situation here is significantly different. There is no indication that Mrs. Milton's affliction changed for the worse between the issuance of the policy in July and her hospital confinement in November. She candidly admits that she had not had a menstrual period for ten months before she purchased the insurance. She went to see Dr. Moore because she felt bad. Her testimony: "I had complaint of my head and neck; so I went to Dr. Moore." The first notation in the doctor's record was that the patient's last period had been fourteen months earlier. After an unenlightening office examina-

tion Dr. Moore put Mrs. Milton in the hospital, where it was found that she suffered from a thyroid deficiency. Pills were prescribed and brought about a return to normal health.

We can find no reasonable basis for declaring that the appellee's hospital expense was attributable to a sickness or disease w. 'ch, in the language of the policy, first commenced or became evident after the effective date of the contract. To the contrary, the examinations and tests merely confirmed the fact that Mrs. Milton had suffered for fourteen months or more from a thyroid deficiency. There is no evidence that the condition had worsened or had for the first time become subject to diagnosis. It is true, as the trial judge observed, that the insured did not know when she applied for the policy that her trouble was attributable to an underactive thyroid gland. It is clear, however, that such an underactivity did exist and that it led to the hospital expenses now in issue. That Mrs. Milton did not know the medical explanation for her condition when she applied for the policy is not a reason for holding that the condition first commenced or became evident after the effective date of the contract.

Reversed and dismissed.

Fogleman, J., concurs.

John A. Fogleman, Justice, concurring. I concur fully in the opinion in this case. A statement in my concurring opinion in *Old Equity Life Insurance Company v. Crumby,* 241 Ark. 982, 411 S. W. 2d 292 that before a sickness can be said to be excluded, there must at least have been sufficient manifestation of it to make the insured seek a diagnosis, had reference to the facts of that particular case and the terms of that policy. Even so, the principle also has application here. The policy in that case had to do with the origin of the "sickness". In this the critical time is the time when the "sickness" became evident. Under the facts of this case appellee's

128

condition was certainly such as would make her aware well before the policy was issued that a medical diagnosis should be sought.