## METROPOLITAN LIFE INSURANCE COMPANY
### v. Robert E. ADAIR

5-5988                                    484 S.W. 2d 703

Opinion delivered September 25, 1972

*Streett & Plunkett,* for appellant.

*Anthony G. Kassos* and *Spencer & Spencer,* for appellee.

Conley Byrd, Justice. The main issue on this appeal is whether the brain tumor suffered by the wife of appellee Robert E. Adair had manifested itself before appellant issued its major medical policy on April 1, 1961.

The record shows that appellee through the two corporations owned by him, had carried health insurance with appellant for some time. In September of 1968, appellee's wife was operated on for lung cancer and payments were made by appellant under its health policy. On February 27, 1969, appellee through his corporations made a group application for a major medical policy. The policy was delivered on April 1, 1969, and contained the following exclusion:

"This Hospital and Surgical Expense Insurance does not cover, and no payment of any kind with respect to a covered family member will be made for, any medical service or supply:

(a) that is furnished during the first six months after the date such person became a covered family member, or during any continuous period of hospital confinement or nursing home confinement in conjunction therewith which commenced during the first six months after such person became a covered family member, as a result of injury sustained, sickness contracted or abnormal physical condition existent prior to such date, except that this exclusion will be waived if the sickness or physical condition had not manifested itself prior to the date the person became a covered family member.''

Appellee testified that, following the September 1968 lung operation, he and his wife returned to El Dorado where she gradually improved. Her condition was such as to permit them to make a trip to Dallas on October the 9th and 10th, where he attended the Texas-Oklahoma football game. His wife visited his brother-in-law at the Veteran's Hospital. Within six weeks after the operation, Mrs. Adair was able to do all of her activities. In addition to her cooking and housework they entertained at night. In accordance with their custom for many years, they rented a house in Hot Springs during the racing season. While there, they attended the races every day except the wife did not go on Saturdays because of the crowd. On April 2, 1969, they were entertaining a couple and their son from Dallas, Texas, a lady from Crockett, Texas, and a lady from Little Rock. His wife served as hostess and prepared the food that was served. She took care of the guests and went to bed around midnight. At the breakfast table around 7:30 a.m. while drinking coffee was the first time his wife complained of anything with regard to the brain tumor. At that time she remarked, "You know, I can hardly hold this coffee cup in my hand." The coffee began to dribble down the side of her mouth and in a few minutes she developed (Jacksonian type) seizures. Mrs. Adair was removed by ambulance to St. Joseph's Hospital in Hot Springs. From there she was transferred to Warner Brown Hospital in El Dorado and then transferred to Houston, Texas, where brain surgery disclosed a brain tumor approximately four centimeters in diameter.

The apparent good health of Mrs. Adair was corroborated by guests who had been attending the races with the Adairs.

Dr. Paul Henley, the Adair family physician, testified that on October 10th, he did a post operative follow-up for the doctors in Houston. He described her as convalescing nicely at that time. At that time she weighed 123 lbs. He was well pleased with her blood pressure. Mrs. Adair came by in December to get a flu-shot. While there she was given a female hormone shot. Approximately two weeks later she got the second flu-shot. He again saw her in January at which time she was given a routine hormone shot. According to Dr. Henley, prior to April 3, 1969, Mrs. Adair did not make any complaints or have any signs or symptoms of anything connected with a brain tumor. Prior to September 1968, Mrs. Adair suffered from menopausal symptoms and also high blood pressure. The high blood pressure had been under surveillance for eight or ten years, but during her December and January visits, her blood pressure was normal.

The medical report from the Houston doctors following the September 1968 operation stated:

"It was the impression of the surgeon that all the tumors had been removed and there was no other evidence of metastasis found on exploration. It was thought that no other therapy such as radiation or chemotherapy was indicated at the present time."

Dr. Kenneth Duzan, called by appellant, described the brain tumor as metastatic carcinoma. He reviewed the medical records, including a medical history taken by Dr. Larkin Wilson of El Dorado which stated:

"This forty-nine year old white female is admitted having developed Jacksonian type seizures isolated to the left hand and face. Approximately eight to ten days ago the patient developed some right facial drooping which cleared over several days. Four days prior to the admission to Warner Brown the patient was noted to have onset of jerking type motion of

the left face and left arm. She was seen in St. Joseph Hospital in Hot Springs, Arkansas, where seizure activity with eyes deviated to the left were observed. She was begun on Dilantin and Phenobarbital but has since had several episodes of seizure activity requiring intermittent intravenous Valium for therapeutic control. She was transferred to Warner Brown."

Based upon this history and the pathology reports, Dr. Duzan concluded that the tumor removed from the brain originated in the lung and that the tumor in the brain had developed over a period of time, at least as long as the time between the first and second operation.

The jury found the issues in favor of appellee and under the record here, we cannot say that there is no substantial evidence to support its verdict.

In *Lincoln Income Life Insurance Co.* v. *Milton,* 242 Ark. 124, 412 S.W. 2d 291 (1967), the claimant admittedly had the symptom that eventually sent her to the doctor for a number of months before the issuance of the policy. Here the wife's apparent good health was an issue of fact for the jury.

Appellant also complains of the failure of the trial court to give two of its requested instructions. We find no merit in this contention because the definition of the term "manifest itself" was properly given in other instructions by the court.

Appellee's counsel is allowed an additional fee in the amount of $1,000.

Affirmed.