## ARKANSAS BLUE CROSS AND BLUE SHIELD, INC. *v.* James L. FUDGE

CA 83-279                                    669 S.W.2d 914

Court of Appeals of Arkansas
En Banc
Opinion delivered June 6, 1984

*Jim Patton,* for appellant.

*John A. Crain,* for appellee.

DONALD L. CORBIN, Judge. This action was brought by

appellee, James L. Fudge, against appellant, Arkansas Blue Cross and Blue Shield, Inc., for the cost of a tonsillectomy performed on appellee. Appellant refused payment on the premise that the hospitalization and surgery were caused by a condition which preexisted the effective date of coverage to appellee under a group health insurance policy issued by appellant. The trial court sitting as a fact finder awarded judgment to appellee against appellant for the sum of $766.04. We reverse and dismiss.

On July 1, 1981, James Fudge obtained coverage under a Farm Bureau group insurance contract underwritten by appellant Arkansas Blue Cross and Blue Shield, Inc. The policy contained the following exclusionary langugae:

Article VI. Benefits and Services Not Included:

A. Treatment of conditions or diseases existing prior to the effective date of the subscriber's contract until such contract has been continuously in effect for a period of at least twelve (12) consecutive months. This exclusion includes, but is not limited to, all conditions or diseases which may become aggravated or acute after the effective date of this contract or endorsement.

B. A "condition or disease" which existed prior to the effective date of the subscriber's contract is one which caused symptoms or other manifestations prior to such effective date in such a manner as would cause an ordinarily prudent person to seek diagnosis, care or treatment.

On February 24, 1982, appellee was admitted to Baxter General Hospital where he underwent a tonsillectomy. Appellee's treating physician was Dr. Maxwell Cheney and his history and physical report stated in part:

This is a 29-year-old white male with known chronic hypertrophic tonsillitis for many years, known upper respiratory allergy with severe nasal suction and difficulty for several years. He has had increasing complaints of recurrent sore throat and inability to feel

well or gain weight and generally feel energetic. He has finally decided to have his chronically enlarged tonsils removed, largely because of choking and recurrent sore throat.

Dr. Cheney's discharge summary stated as follows:

This patient is a known severe allergy patient and has had chronic tonsillitis three or four times per year, most of his life. The patient has been told in the past that tonsillectomy was contradicted [contraindicated] in an allergic patient, however, this was many years ago. The patient has taken Ampicillin at least two weeks out of every month for the past year.

Appellant contends for reversal that the trial court's ruling that appellant had not sufficiently established the existence of a preexisting condition is against the preponderance of the evidence and clearly erroneous. It is well settled that findings of fact by a trial judge will not be set aside by this Court unless clearly erroneous (clearly against the preponderance of the evidence). A.R.C.P. Rule 52(a); *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123 (1981).

We believe the decision of the Arkansas Supreme Court in *Lincoln Income Life* v. *Milton*, 242 Ark. 124, 412 S.W.2d 291 (1967), is dispositive of this case. There, the plaintiff-insured was hospitalized in November, 1965, after issuance of a policy in July, 1965. Her complaint was that she felt bad. Her physician testified that her last menstrual period was September, 1964, and tests performed during her hospitalization revealed that her thyroid gland was underactive, producing insufficient hormones to regulate bodily functions, including menstruation. The trial judge entered judgment for the plaintiff-insured, finding that she did not know the cause of her physical disorder when she applied for the policy. The Supreme Court reversed, stating:

We can find no reasonable basis for declaring that the appellee's hospital expense was attributable to a sickness or disease which, in the language of the policy, first commenced or became evident after the effective

date of the policy. . . . There is no evidence that the condition had worsened or had for the first time become subject to diagnosis. It is true, as the trial judge observed, that the insured did not know when she applied for the policy that her trouble was attributable to an underactive thyroid gland. It is clear, however, that such an underactivity did exist and that it led to the hospital expenses now in issue. That Mrs. Milton did not know the medical explanation for her condition when she applied for the policy is not a reason for holding that the condition first commenced or became evident after the effective date of the contract.

*Milton, supra,* is in accord with *State National Life Ins. Co.* v. *Stamper,* 228 Ark. 1128, 312 S.W.2d 441 (1985), wherein the Supreme Court stated that:

. . . [T]he weight of authority is that the sickness should be deemed to have had its inception at the time it first manifested itself or became active, or when sufficient symptoms existed to allow a reasonably accurate diagnosis of the case . . .

The date of diagnosis of the condition is not dispositive. As Justice Fogleman observed in his concurring opinion in *Old Equity Life Ins. Co.* v. *Crumby,* 241 Ark. 982, 411 S.W.2d 292 (1967):

Our decisions have turned on the active manifestation of the condition and not on the ability to diagnose.

Based upon the admitting and discharge reports of Dr. Cheney and the testimony at trial of Dr. Cheney and appellee, it is clear that appellee sought and received treatment for a condition which had long preexisted his insurance coverage. Taking the evidence as a whole, appellee clearly had not only a condition which manifested symptoms prior to the effective date of his insurance contract, but he also sought and received treatment for an extended period of time for this condition prior to the effective contract date of the contract. The fact that the condition was not allegedly diagnosed as requiring surgery

until appellee was admitted to the hospital by his doctor for surgery on February 24, 1982, is immaterial. Dr. Cheney testified that appellee had experienced chronic tonsillitis for many years prior to his hospitalization. He also stated that his examination established that the condition had "absolutely" existed for some time. The term "chronic" is defined as "of long duration; denoting a disease of slow progress and long continuance." Stedman's Medical Dictionary 278 (23d ed. 1976). The record reflects that appellee received treatment in the form of antibiotics prescribed over the telephone by Dr. Cheney for at least one year before his surgery. Appellee was not seen by Dr. Cheney in his office until the week preceding his surgery. In view of appellee's history of recurring sore throats, we believe a reasonable and prudent person, as defined in Article VI (B) of the contract of insurance, would have sought a direct medical examination of his condition. This was not done in the instant case. Accordingly, we hold that appellee's condition preexisted the effective date of coverage and the trial court was clearly erroneous in awarding judgment to appellee.

Reversed and dismissed.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. Although the majority opinion acknowledges the existence of A.R.C.P. Rule 52(a), which provides that the trial court's findings of fact shall not be set aside unless clearly against the preponderance of the evidence and that due regard shall be given to his opportunity to judge the credibility of the witnesses, the majority sets those findings aside without mentioning one word of the testimony given by the appellee or giving any reason why his testimony is not credible.

Because I believe the proper application of Rule 52(a) would require that this case be affirmed, I dissent.

I am authorized to state that Judge Cooper agrees.