Madelaine BULLWINKEL and George E. Bullwinkel, Plaintiffs–Appellants,

v.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 93–1509.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1993.

Decided March 7, 1994.

Michael J. Smith (argued), Chicago, IL, for plaintiffs-appellants.

J. Robert Geiman, William A. Chittenden, III, and Douglas Varga (argued), Peterson & Ross, Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, MANION, Circuit Judge, and GRANT, District Judge.*

MANION, Circuit Judge.

In September 1991, Madelaine Bullwinkel had a lump removed from her left breast. The lump was later discovered to be cancerous. She filed a claim with her insurance company seeking coverage for the lump removal and subsequent cancer treatments. The insurance company denied coverage under the pre-existing condition limitation in the insurance policy. The company concluded that the lump, which Madelaine first discovered in July, and which was treated by a physician on July 20, predated the July 31 effective date of the insurance policy. Madelaine and her husband filed suit under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1001–1461. The district court granted summary judgment for the insurance company. Madelaine and her husband appeal. We affirm.

I.

This case highlights the perils of changing health insurance companies during the

* Hon. Robert A. Grant of the Northern District of Indiana is sitting by designation.

course of medical treatment. Madelaine's husband, George Bullwinkel, operates Bullwinkel Partners Limited, a law firm. For reasons not relevant to this case, George decided to offer his law firm's employees and their dependents health insurance benefits. He negotiated a deal with New England Mutual Life Insurance Company, which agreed to begin providing health insurance on July 31, 1991. George and Madelaine enlisted under this plan.

In July 1991, Madelaine noticed a lump in her left breast. She had detected a similar lump the previous February, but a mammogram did not reveal any abnormality. On July 20, 1991 Madelaine visited her physician, who performed an ultrasound examination. This time, he detected what he diagnosed as a cyst. He made no definite conclusion whether the cyst was cancerous or benign. He assured Madelaine, however, that more than likely the cyst was benign. But he was concerned about the possibility of cancer. He referred Madelaine to a surgeon for removal and biopsy of the cyst, telling her "Let's be safe and take it out."

On August 15—two weeks after the New England Mutual insurance policy became effective—Madelaine visited the surgeon, who examined her breast. The surgeon removed the lump on September 6. Tests on the removed tissue revealed that the lump was cancerous. Since that discovery, Madelaine has had additional cancer treatment, including surgery, radiation treatment, and chemotherapy.

Madelaine sought coverage from New England Mutual for her initial surgery and subsequent cancer treatments. New England Mutual denied coverage, claiming that the cancer was a pre-existing condition, for which the insurance policy explicitly precluded coverage. The insurance policy contained the following "Pre–Existing Condition Limitation":

> No benefits are payable for a condition, sickness, or injury for which you or your dependent were seen, treated, diagnosed, or incurred medical expense in the six-month period just before insurance starts until the earlier of: ... for you or your

dependent, the end of a period of twelve consecutive months after insurance starts. The insurance policy defined the term "sickness" as a "bodily disorder, disease, or mental infirmity or complication of pregnancy."

The Bullwinkels sued New England Mutual under ERISA, seeking coverage for the surgery and cancer treatments. After a brief period of discovery, both sides moved for summary judgment. In passing on those motions, the district court reviewed the terms of the insurance policy *de novo;* nothing in the policy required deferential review of New England Mutual's decision to deny coverage. *Cf. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (if insurance policy gives plan administrator discretion to grant or deny coverage, the court reviews that decision for an abuse of discretion). The district court determined that, under the undisputed facts, the cancer was a pre-existing condition. The court therefore granted summary judgment in favor of New England Mutual. Significantly, in its order granting summary judgment, the court noted: "There is no suggestion that the lump became malignant after the coverage commenced or that it was removed for cosmetic reasons without any thought or concern that it might be cancerous. Rather, it is clear that the purpose of the surgery was to excise and biopsy the lump because of the risk, small though it may have been, that it was cancerous." *Bullwinkel v. New England Life Mutual Ins. Co.,* No. 92 C 2528 at 8, 1993 WL 22698 (N.D.Ill. Jan. 29, 1993).

The Bullwinkels have appealed. We must determine whether the July treatment triggered the pre-existing condition limitation in the insurance policy. If so, then New England Mutual prevails, and the post-policy treatments at issue are not covered. If not, the Bullwinkels prevail, and they are entitled to coverage.

## II. Analysis

Generally, this case concerns an insurance policy, which is a contract. Like all contracts, the writing represents an agreement between the parties. In consideration for premiums paid, New England Mutual prom-

ised to pay health benefits to the Bullwinkels under certain terms and conditions. New England Mutual specifically refused to cover any "condition, sickness, or injury" which pre-existed the policy.[1] The Bullwinkels agreed to this provision, but they and the company disagree on its meaning.

■ This case is governed by ERISA, a law which requires us to apply federal common law rules of contract interpretation when interpreting the terms of an employee health insurance policy. *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992). "Federal common law rules of contract interpretation parallel equivalent state rules. We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience, and we construe ambiguities in ERISA plans against the drafter." *Meredith v. Allsteel Inc.*, 11 F.3d 1354, 1358 (7th Cir.1993). The Bullwinkels commit a large portion of their brief to making public policy arguments favoring their position. But we are restricted by federal common law rules of contract interpretation to view the language of the insurance policy to determine where the parties' minds met. *See Hammond*, 965 F.2d at 430. Therefore, we must give effect to the words which denote the bargain, not in light of public policy considerations, but in light of their plain meaning.

■ The first portion of the pre-existing condition limitation succinctly states the exclusion: "No benefits are payable for a condition, sickness, or injury for which you or your dependent were seen, treated, diagnosed, or incurred medical expense in the six-month period just before insurance starts...." Both sides agree that the breast lump was a condition which was diagnosed and treated in July, before the effective date of the policy. Therefore, both sides essentially concede that the post-policy treatment of the lump— the August 15 visit to the surgeon and the September 6 lump removal—is not covered under the policy. This appeal, then, focuses on the cancer treatments which took place

after the lump was removed. The Bullwinkels argue that cancer was never diagnosed in July, and therefore that Madelaine was never "seen, treated, diagnosed," nor did she incur medical expenses for cancer in July. In short, they argue that while the lump may have been a pre-existing condition under the policy, the cancer was not since it was not actually diagnosed. New England Mutual does not make the same distinction between the lump and the cancer. According to New England Mutual, the September biopsy conclusively established that the lump was cancerous. Therefore, any treatment for the lump in July was actually treatment for cancer, and cancer was a pre-existing condition for which coverage was excluded.

The Bullwinkels cite a number of cases to support the distinction they draw between the lump and the cancer. They present their argument in this respect as follows:

[O]ther courts have recognized this principle: having a slight spine curvature is not the same as having scoliosis. *Rivera v. Benefit Trust Life Insurance Co.*, 921 F.2d 692 (7th Cir.1991). Having bloody stools is not equivalent to having rectal cancer. *Holub v. Holy Family Society*, 164 Ill. App.3d 970, 115 Ill.Dec. 894, 518 N.E.2d 419 (1st Dist.1987). An inverted nipple is not already a breast cancer. *Bonura v. United Bankers Life Ins. Co.*, 552 So.2d 1248 (La.1989). A mole on a doctor's back is not to be presumed a malignant cancer. *Hood v. Security Insurance Co. of New Haven*, [247 S.C. 71], 145 S.E.2d 526 (S.C. 1965). Being diagnosed with pulmonary hypertension is not equivalent to having an atrial septal defect. *Ross v. Western Fidelity Ins. Co.*, 872 F.2d 665 (5th Cir.1989). By way of contrast, [see] *Kirk v. Provident Life & Acc. Ins. Co.*, 942 F.2d 504 (8th Cir.1991)....

Unfortunately, the cases the Bullwinkels cite are not very helpful. Most did not involve interpretation of a pre-existing condition limitation in an insurance policy. None addressed language closely similar to the lan-

---

1. Under the terms of the policy, the pre-existing condition provision limited coverage only for one year after the insurance became effective. The treatments at issue in this case all took place in that year. The parties have not asked us to determine whether Madelaine would be entitled to coverage for treatments occurring after the one year period.

guage we have been asked to interpret in this case. Indeed, *Rivera*, 921 F.2d 692, *Holub*, 115 Ill.Dec. 894, 518 N.E.2d 419, and *Hood*, 145 S.E.2d 526, concerned purported misrepresentations by the insureds when purchasing an insurance policy. *Bonura*, 552 So.2d 1248, involved a trial court's factual finding made after a trial which the appellate court refused to deem clearly erroneous.

Only *Kirk*, 942 F.2d 504, approaches similarity with the case at hand. But that case, which the Bullwinkels introduce "[b]y way of contrast," actually supports New England Mutual's position. In that case, Kirk was treated for a number of symptoms—pain in his right side, night sweats, an ache in his leg, a lesion on his knee, and swelling—which led his doctor to suspect congenital heart disease. But a blood culture which might have detected such a disease proved negative. Subsequently, Kirk obtained an insurance policy which contained a pre-existing condition exclusion. Kirk began once again to display symptoms of congenital heart disease. This time, a heart specialist diagnosed the disease as bacterial endocarditis, a heart illness. The heart specialist, as well as a specialist in infectious diseases, both concluded that the disease had been present before insurance coverage commenced.

The court was asked to interpret a pre-existing condition exclusion which provided that "[n]o benefits [are] payable for expenses due to any Injury or Illness beginning before the effective date of coverage." That case, like this one, was governed by ERISA. The court determined that Kirk was not covered for the heart condition, because it pre-dated the policy. The court was unpersuaded by the fact that the condition was not accurately diagnosed until after the policy became effective. The court also separated its decision from the type of case where "'the insured has some supposedly trivial infirmity or abnormality when the policy took effect. Later on, however, the condition changed for the worse and for the first time either actually became, or became diagnosable as, a sickness or disease falling within the coverage of the policy.'" *Kirk*, 942 F.2d at 506, quoting *Lincoln Income Life Ins. Co. v. Milton*, 242 Ark. 124, 412 S.W.2d 291 (1967). The court reasoned that Kirk did not exhibit only trivial

symptoms; he exhibited symptoms which led to the inescapable conclusion that he had a heart condition before his insurance commenced.

If we were to base our decision on *Kirk*, we would affirm the district court's denial of coverage in this case. As in *Kirk*, the condition in this case was not fully diagnosed until after the insurance became effective. And as in *Kirk*, the symptoms which Madelaine exhibited were not trivial and inconclusive— like a cough or a rash which might imply any of a variety of maladies, or none at all. The breast lump was anything but trivial; in September it was determined to be cancer.

Though instructive, *Kirk* is not the last word in this case. The insurance policy language which the court interpreted in *Kirk* differs significantly from the language in the policy before us. Therefore, our analysis returns to the policy language which this case presents. Is a malignant breast lump— discovered before the effective date of an insurance policy but not definitely diagnosed as cancer until after coverage commenced—a "condition, sickness, or injury" for which Madelaine was "seen, treated, diagnosed, or incurred medical expenses" in July? Certainly, a malignant breast tumor is a "condition" and a "sickness." True, Madelaine was never "seen, treated, diagnosed" specifically for breast cancer in July, nor did she incur medical expenses specifically for breast cancer in July. But she was "seen, treated, diagnosed" and she did incur medical expenses for a breast lump in July. The lump was discovered in September to be cancerous. We may infer from this fact that the lump was also cancerous in July. So, even though Madelaine did not know the lump was cancerous in July, her visit with the doctor in that month concerning the lump actually concerned cancer. It follows that Madelaine was "seen" and "treated" and incurred medical expenses for her cancer in July. Therefore, any post-policy treatment concerning the same condition is not covered.

Ultimately, the Bullwinkels rest their entire appeal on one argument. They claim that a court cannot conclude on summary judgment that a lump discovered to be can-

cerous in September was also cancerous in July. They argue that this conclusion can only be made by a fact-finder. They request a remand to give the fact-finder an opportunity to consider the competing inferences. At oral argument, the Bullwinkels' attorney conceded that if the lump was cancerous in July, then the pre-existing condition limitation would preclude coverage. He made this concession during questioning by the court:

> COURT: But what fact can be revealed [on remand]?
>
> ATTORNEY: Did she have breast cancer for which she was treated [in July]?
>
> COURT: Suppose every doctor that knows anything about cancer says that this was there for a year?
>
> ATTORNEY: But no doctor said that.
>
> COURT: But suppose they do. Do you lose?
>
> ATTORNEY: We lose.

The problem with granting a remand is that the record does not present competing inferences. The only reasonable inference which the record in this case allows is that the lump discovered to be cancerous in September was also cancerous in July. *See Donohue v. Consolidated Operating & Production Corp.*, 982 F.2d 1130, 1137 (7th Cir.1992) ("on summary judgment, we need only draw reasonable inferences in favor of the non-movant, not every possible inference.") If the Bullwinkels desired to negate this inference, or at least to create a question of fact, they should have submitted some kind of medical affidavit stating that a breast lump can be benign in one month, but cancerous two months later. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (party opposing motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.") They do not do this. Really, they do not even attempt to argue that the lump was benign in July. They just argue that the district court was not permitted to determine that the lump was cancerous in July. Therefore, the Bullwinkels have not shown a genuine issue of material fact. It follows that the district court was correct to grant summary judgment in favor of the insurance company.

Obviously, this case is not an authorization for summary judgment in all future cases dealing with pre-existing condition limitations. Several attributes make this case unique. First, the lump discovered in July was not a trivial and inconclusive symptom. *See Kirk*, 942 F.2d at 506. Consider the hypothetical where a person purchased cough medicine in one month, then obtained insurance, only to learn in the next month that he had lung cancer, which possible caused his hacking. A district court would not be able to conclusively determine whether treatment for the cough was actually treatment for cancer, without the benefit of an evidentiary hearing. Here, there is no need for an evidentiary hearing, because we may reasonably infer that the breast lump was cancerous in July, and the record presents no competing inferences. This case is also unique because the Bullwinkels never really attempt to argue that the breast lump was benign in July. In the previous hypothetical, the insured would likely argue that the cough could have been caused by any number of maladies other than cancer. That type of argument—which was not made here—would at least get the case to the fact-finder. Finally, this case is unique because the Bullwinkels' attorney really rested his entire appeal on the argument that a court may not infer that a lump discovered to be cancerous in one month was also cancerous two months before. But this is a reasonable inference, which becomes conclusive in the absence of competing inferences. We make no statement about what might happen if an attorney in a future case presents different arguments and authority to the court. We merely assume, out of deference to the Bullwinkels' attorney, that no better arguments are available.

### III. Conclusion

For the foregoing reasons we
Affirm.