Karen McWILLIAMS, Plaintiff,

v.

CAPITAL TELECOMMUNICATIONS INC., and CoreSource, Inc., Defendants.

No. CIV.A. 1:CV–96–2151.

United States District Court, M.D. Pennsylvania.

Nov. 25, 1997.

We are considering cross-motions for summary judgment, which we will evaluate under the well established standard. *See Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 536 n. 3 (3d Cir.1994).

## II. *Background.*

Based on the pleadings and evidentiary submissions of the parties, the following is the undisputed background to this litigation.

The plaintiff used to work for Phillips Office Products. She became employed by CTI in October 1995 but did not become eligible for medical and short-term disability coverage under its employee benefit plan until January 1, 1996. Accordingly, under the amendments to ERISA made by the Comprehensive Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. §§ 1161–68, she continued the insurance she had with her former employer from October through December 1995, thinking that this provided her with a seamless transition to her new employer's coverage.

However, the plaintiff had overlooked exclusions for pre-existing conditions in CTI's plan. Paragraph 5.01 in subparagraph "ah," one of 40 subparagraphs excluding coverage under certain circumstances, provides, in pertinent part, that no payment would be made under the plan:

> for Pre–Existing Conditions that were being treated within 90 days prior to the date of coverage. . . .

Article I of the plan set forth plan definitions. In pertinent part, paragraph 1.44 defines a "Pre–Existing Condition" as:

> any Injury or Sickness for which an Employee either received medical treatment, services, or advice or took prescribed drugs or medicine during the 90 day period prior to the date of coverage. . . .

Paragraph 1.50 defines "Sickness" in a basically circular fashion:

> Any pregnancy or illness, other than an Injury not covered by Worker's Compensation or any occupational disease act.

Although not necessary to resolve this case, paragraph 1.23 defines "Injury" as:

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The plaintiff, Karen McWilliams, received treatment for thyroid cancer and sued her employer, Capital Telecommunications Inc. (CTI), in state court to recover benefits allegedly owed her under its medical and short-term disability plan, governed by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. § 1001–1461.

The other defendant, CoreSource, Inc., the plan administrator, removed the case here on the basis of our federal question jurisdiction. (The case is governed by ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)).

This case requires us to analyze a typical pre-existing-conditions exclusion, common in health insurance policies and their ERISA counterparts. The subject has generated some sharp conflict in the courts that have considered the issue because the result of enforcing the exclusion is to leave an often unwary ERISA-plan participant or insured with substantial medical bills.

As intimated, CTI has refused to pay benefits because it believes Ms. McWilliams is seeking coverage for a pre-existing condition that is excluded under the terms of the plan. Plaintiff counters that the exclusion does not preclude coverage and that, in any event, it is invalid because it is not conspicuous, plain and clear, thus defeating her reasonable expectations of coverage.

Accidental bodily injury which does not arise out of or in the course of employment. Injury shall not include any intentionally self-inflicted injury.

Article VI deals with short-term disability benefits. Paragraph 6.01 establishes the conditions for receiving those benefits and paragraph 6.02, captioned "Limitations and Exclusions," prohibits short-term disability benefits for, among other things, "pre-Existing conditions that were treated within 90 days prior to the date of coverage."

The plan has a table of contents listing the "Articles" and the "Title" of each article. Article I is identified as the "Definitions" article, Article V as the "Exclusions" article, and Article VI as the "Short–Term Disability Benefits" article. The table of contents does not indicate that the latter article contains an exclusion provision.

The effect of these provisions was to leave plaintiff without coverage under CTI's plan for pre-existing conditions as defined in the plan for a period from October 1, 1995, through December 31, 1995.

Since 1988, plaintiff has had a history of lumps and growths. The plaintiff avers that these growths or cysts have appeared from time to time in her breasts and one time in her thyroid. She has also had uterine fibroids. These growths, including the one in her thyroid, have either disappeared on their own or have been benign.

All of this changed on December 11, 1995, when during the course of a routine exam, the plaintiff's registered-nurse practitioner discovered a second growth on the thyroid, a one-centimeter soft mass which ultimately was diagnosed as cancerous. However, the nurse practitioner avers that such a mass would ordinarily represent a thyroid cyst or a goiter and only rarely would be carcinoma of the thyroid. Diagnosing the mass as probably a thyroid cyst, she immediately ordered an ultrasound.

On December 21, 1995, the ultrasound was conducted. It revealed that the left lobe of the thyroid was enlarged and contained a large lobulated mass. On January 16, 1996, the plaintiff discussed the ultrasound results with the nurse-practitioner for the first time.

The latter recommended a biopsy. The plaintiff was not concerned about the biopsy because she thought the lump in her thyroid was just another mass that was either benign or would go away on its own. On January 30, 1996, the biopsy was performed and it revealed atypical glandular cells. On February 16, 1996, a total thyroidectomy was performed which revealed papillary thyroid carcinoma of the left lobe. Apparently, a diagnosis of cancer was made at this time.

The plaintiff sought coverage under the CTI plan for $8,955.85 in medical bills and $2,035.80 in short-term disability benefits. The claim was rejected both initially and on administrative appeal. The plaintiff then filed this lawsuit.

### III. Discussion.

#### A. Standard of Review.

■ Before addressing the parties, arguments as to coverage, we briefly discuss the defendants' argument concerning our standard of review. Judicial review of a plan administrator's decision concerning coverage may be either under a de novo standard or under the "narrower arbitrary and capricious standard." *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1254 (3d Cir.1993). The defendants argue that our review should be under the arbitrary-and-capricious standard. They rely on plan language stating that the plan administrator's decision on appeal will be "final." Article IX, ¶ 9.04.f. In their view, this language confers sole discretion on the administrator to make coverage determinations, thus requiring us to defer to its judgment unless arbitrary and capricious. *Heasley, supra.*

We reject the defendants' argument. There is other language that would support the de novo standard of review. Paragraph 9.04.f also requires the decision on appeal be "in writing setting forth specific reasons for the decision and specific references to the pertinent Plan provisions upon which the decision is based." This language appears to channel the administrator's decisionmaking process. Consequently, the plan is at best ambiguous as to the authority of the administrator. Hence, in light of *Heasley*, it appears

the defendants would have had to have provided more proof than the bare policy language. In any event, we need not decide this issue to dispose of this case. Even under the de novo standard, we must find in favor of the defendants. We turn now to the parties' arguments.

### B. Interpretation of the Plan Language.

In analyzing ERISA-plan language we use ordinary principles of contract construction. *See Taylor v. Continental Group,* 933 F.2d 1227 (3d Cir.1991) (citing *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3d Cir.1980)).

■ In moving for summary judgment, the plaintiff argues that the language of the pre-existing conditions clause does not exclude coverage because that clause requires that she was "being treated" within the 90–day period before the date of coverage. Plaintiff maintains she was not being treated before January 1996; she was merely having routine check-ups based on her history of having recurrent lumps and growths, and only an examination and an ultrasound occurred before January 1, 1996, the date of coverage under the CTI plan. In the plaintiff's view, treatment did not happen until the thyroidectomy in February 1996 because a person cannot be treated for a sickness until it has been diagnosed. Hence, she is entitled to reimbursement of her medical expenses and payment of short-term disability.

In opposition, the defendants argue that the plaintiff ignores the definition of a pre-existing condition set forth in the plan which, if taken into account, precludes coverage. Under the plan, a pre-existing condition is not just an injury or sickness for which an employee receives "medical treatment" but also one for which the employee receives "advice." In the defendants' view, the plaintiff received such advice in the 90 days before the effective date of the coverage when the nurse-practitioner told plaintiff to have an ultrasound performed. Further, they argue, based on the affidavit of their medical expert, that the nurse-practitioner's examination on December 11, 1995, and the ultrasound on December 21, 1995, were part of her treat-

ment for the thyroid cancer and provide an additional reason for denying coverage.

In support, the defendants cite the following cases: *Bullwinkel v. New England Mutual Life Insurance Co.,* 18 F.3d 429 (7th Cir.1994); *Hardester v. Lincoln National Life Insurance Co.,* 33 F.3d 330 (4th Cir. 1994) (*Hardester I*), *vacated en banc,* 52 F.3d 70 (4th Cir.1995) (*Hardester II*); *Kirk v. Provident Life and Accident Insurance Co.,* 942 F.2d 504 (8th Cir.1991); and *Cury v. Colonial Life Insurance Co.,* 737 F.Supp. 847 (E.D.Pa.1990).

As the defendants recognize, *Bullwinkel* is the leading case standing for the proposition that coverage is excluded in circumstances like the present. In *Bullwinkel,* the ERISA plan excluded coverage for "a condition, sickness or injury for which you or your dependent were seen, treated, diagnosed, or incurred medical expense in the six-month period just before insurance starts...." 18 F.3d at 430. The effective date of coverage for plaintiff, Madelaine Bullwinkel, the covered individual, was July 31, 1991. As succinctly stated by the Seventh Circuit, the facts giving rise to her claim against the plan were as follows:

> In July 1991, Madelaine noticed a lump in her left breast. She had detected a similar lump the previous February, but a mammogram did not reveal any abnormality. On July 20, 1991 Madelaine visited her physician, who performed an ultrasound examination. This time, he detected what he diagnosed as a cyst. He made no definite conclusion whether the cyst was cancerous or benign. He assured Madelaine, however, that more than likely the cyst was benign. But he was concerned about the possibility of cancer. He referred Madelaine to a surgeon for removal and biopsy of the cyst, telling her "Let's be safe and take it out."
>
> On August 15—two weeks after the New England Mutual insurance policy became effective—Madelaine visited the surgeon, who examined her breast. The surgeon removed the lump on September 6. Tests on the removed tissue revealed that the lump was cancerous. Since that discovery, Madelaine has had additional cancer treat-

ment, including surgery, radiation treatment, and chemotherapy.

*Id.* at 430.

Conceding that the costs associated with examining and removing the lump were not recoverable, Bullwinkel sought recovery of the medical bills incurred afterward to treat her cancer, arguing that the cancer could not be a pre-existing condition because it had not been diagnosed before the effective date of coverage. The Court of Appeals rejected this position. Noting that it was significant that Bullwinkel did not contend that the lump was not cancerous before the effective date of coverage, the court stated:

> [o]ur analysis returns to the policy language which this case presents. Is a malignant breast lump—discovered before the effective date of an insurance policy but not definitely diagnosed as cancer until after coverage commenced—a "condition, sickness, or injury" for which Madelaine was "seen, treated, diagnosed, or incurred medical expenses" in July? Certainly, a malignant breast tumor is a "condition" and a "sickness." True, Madelaine was never "seen, treated, diagnosed" specifically for breast cancer in July, nor did she incur medical expenses specifically for breast cancer in July. But she was "seen, treated, diagnosed" and she did incur medical expenses for a breast lump in July. The lump was discovered in September to be cancerous. We may infer from this fact that the lump was also cancerous in July. So, even though Madelaine did not know the lump was cancerous in July, her visit with the doctor in that month concerning the lump actually concerned cancer. It follows that Madelaine was "seen" and "treated" and incurred medical expenses for her cancer in July. Therefore, any post-policy treatment concerning the same condition is not covered.

*Id.* at 432 (brackets added).

The defendants would apply the same analysis here. In this case, the plan excluded coverage for any sickness for which an employee "received medical treatment, services, or advice ... during the 90 day period prior to the date of coverage." The effective date of McWilliams's coverage was January 1, 1996, and the defendants argue that two events precluding coverage occurred before that date. First, the plaintiff received advice about her thyroid lump on December 11, 1995, when her nurse-practitioner recommended an ultrasound. Second, the plaintiff received service for the condition when the ultrasound was performed on December 21, 1995. Thus, under the terms of the plan, the thyroid cancer was not covered because it was pre-existing, and the absence of a diagnosis before the effective date is immaterial.[1]

As further support, the defendants discuss *Cury, supra,* in which the court ruled that the plaintiff claimant's multiple sclerosis was a pre-existing condition not covered under an ERISA health plan. The plan excluded coverage for "a sickness or injury" for which the covered individual received "medical treatment or consultation," "medical care or services," "diagnostic tests," or took prescribed drugs or medicine within 90 days before her effective date of coverage. The plaintiff had consulted with doctors about symptoms characteristic of multiple sclerosis in the precoverage period. However, she asserted that the disease was not pre-existing because it had not been diagnosed until after the effective date. The court rejected this argument because the plan language did not limit pre-existing conditions to those that were diagnosed before the effective date. The court stated:

> Plaintiff incorrectly argues that her disability does not fall within the pre-existing condition period, because no doctor rendered a diagnosis of multiple sclerosis during the pre-existing period. As previously stated, the policy exclusion applicable to this case is unambiguous. The plain language of the clause only requires that the claimant either (a) receive medical treatment or consultation; (b) have medical care or services; (c) have diagnostic tests,

---

1. The defendants have argued that the recommendation of a biopsy also constituted advice in the precoverage period but this is incorrect. The only recommendation in the record about a biopsy occurred on January 16, 1996, after the January 1 effective date.

or (d) take prescribed drugs or medicines within 90 days prior to your effective date.

737 F.Supp. at 854.

We agree with the defendants' analysis and conclude there is no coverage under the plan. (We therefore need not consider their medical expert's argument that plaintiff was treated before her effective date.)

In countering the defendants, the plaintiff cites no cases of her own and limits herself to attempting to distinguish *Bullwinkel*. She argues that *Bullwinkel* does not apply here because the pre-existing-conditions clause there is broader than the one at issue here. The plan in *Bullwinkel* excluded coverage for a pre-existing "condition" that a claimant was "seen" for, not just for a "sickness" or "injury," as here. In contrast, and as noted above, the clause here required "treat[ment]" for a "sickness" or "injury." In the plaintiff's view, the wording of the CTI plan, unlike the language at issue in *Bullwinkel*, implies the need for a diagnosis, which did not occur in her case until after her effective date. Additionally, unlike in *Bullwinkel*, Ms. McWilliams gave up her prior health insurance under the belief that she had coverage.

The plaintiff's first attempt at distinguishing *Bullwinkel* fails. We have already rejected her argument that the CTI pre-existing-conditions exclusion applies only to treatment for a pre-existing sickness or injury. In addition to treatment, as provided in the definitional section for pre-existing conditions, it also applies to medical services or advice. The terms "services" and "advice" are broad enough to be the equivalent of the "seen" term in the *Bullwinkel* plan. Further, to the extent the plaintiff relies on the term "condition" in the *Bullwinkel* plan, and the CTI plan uses "sickness" or "illness", that distinction is irrelevant here when no one disputes that the lump was an illness—thyroid cancer—and that the cancer was present both before and after the effective date.

The plaintiff's second argument also fails. The plaintiff in *Bullwinkel* also gave up her prior health insurance under the belief that she had new coverage.

There are cases supportive of the plaintiff and some contrary to *Bullwinkel*. It is surprising that the plaintiff does not cite them in light of two points she makes in her brief. First, as noted above, she made the legal argument that the language about treatment in the CTI plan implied the need for a diagnosis. Second, she submitted uncontested evidence that the lump on her thyroid was found as part of a routine examination to monitor the benign lumps and cysts she has historically developed, so that, as she presented it in the factual section of her brief, the examination on December 11, 1995, and the ultrasound on December 21, 1995, did not constitute service or advice for thyroid cancer, but for her condition of developing benign growths.

The first point is supported by *Hughes v. Boston Mutual Life Insurance Co.*, 26 F.3d 264 (1st Cir.1994), in which the First Circuit held that a "recent treatment" exclusion was ambiguous and may not bar an ERISA claimant suffering from multiple sclerosis from recovering benefits under a disability plan, even though he had seen several doctors for symptoms of multiple sclerosis before the effective date of his coverage. The plan excluded coverage for a "sickness or injury" for which the individual had received "treatment" in the six months before coverage, with treatment defined as "consultation, care or services provided by a physician including diagnostic measures." *Id.* at 266.

Despite the absence from these plan provisions of any requirement that the illness be known or diagnosed in the precoverage period, the First Circuit ruled that the recent treatment exclusion (in the absence of extrinsic evidence) was ambiguous and hence had to be construed against the drafter, stating in part:

> Hughes reasonably suggests that the exclusion requires some awareness on the part of the physician or the insured that the insured is receiving treatment for the condition itself. *See Ross v. Western Fidelity Ins. Co.*, 881 F.2d 142, 144 (5th Cir.1989) ("[T]here is at least a reasonable argument that, under [a recent treatment exclusion], treatment *for a specific condition* cannot be received unless the specific

condition is known.") (emphasis in original); *Karagon v. Aetna Life Ins. Co.,* 58 Mich.App. 677, 228 N.W.2d 515, 516 (1975) (holding that treatment of symptoms of undiagnosed multiple sclerosis did not trigger recent treatment exclusion where disease did not manifest itself with sufficient clarity to allow reasonably accurate diagnosis and treatment).

*Id.* at 269 (footnote omitted) (brackets added in *Hughes* ). The court reversed the grant of summary judgment in favor of the insurance company and remanded for a trial in which extrinsic evidence of the meaning of the exclusion could be produced.

In its analysis, the First Circuit acknowledged that *Bullwinkel* was contrary authority but refused to believe that it represented the only interpretation of pre-existing-conditions types of exclusions. It also rejected *Cury, supra,* and *Marshall v. UNUM Life Insurance Co.,* 1992 WL 554314 (D.N.D.), *aff'd on other grounds,* 13 F.3d 282 (8th Cir.1994), a case that held, like *Cury,* that there need not be knowledge or diagnosis before a pre-existing-conditions exclusion will be enforced. In the First Circuit's view, the courts in *Cury* and *Marshall* erred:

> by focusing exclusively on the absence of a requirement for diagnosis without seriously considering whether the language concerning treatment "for" a particular condition is ambiguous. *See Marshall,* 1992 WL 554314, at *2 ("[T]he language of the policy in the instant case is clear and unambiguous; diagnosis is not required by the policy for a finding that there is a pre-existing condition."); *Cury,* 737 F.Supp. at 854 ("There is no requirement that a diagnosis, definite or otherwise, of the pre-existing condition must be made during the pre-existing condition period.").

*Id.* at 270 n. 5.

We respectfully disagree with *Hughes.* First, the court did not explain its conclusional ruling that the recent-treatment exclusion was ambiguous. It simply announced its belief that the exclusion could be read to require some knowledge by the insured or a diagnosis by a doctor. But this conclusion is not apparent at all from the language. People receive advice or consultation (and sometimes treatment) from doctors all the time without either the doctor or the patient knowing what the illness, sickness or condition is. That is why patients go to doctors when they begin to experience symptoms.

Second, *Ross* and *Karagon,* the cases cited in *Hughes,* are not enlightening either. *Ross* simply provided clarification on rehearing of an earlier opinion in the same case. *See* 872 F.2d 665 (5th Cir.1989). The earlier opinion in *Ross* is just as conclusional as *Hughes.* 872 F.2d at 669. *Karagon* ignored the language of the pre-existing-conditions exclusion in that case which, like *Hughes,* precluded coverage for an illness or injury for which the covered individual had received treatment or services during the precoverage period. It relied instead on a prior Michigan case, *Mayer v. Credit Life Insurance Co.,* 42 Mich.App. 648, 202 N.W.2d 521 (1972), dealing with a credit insurance policy providing coverage only for a sickness "contracted and first manifested" during the term of the policy. *Id.* at 523. *Mayer* ruled that the term "manifested" meant that the illness had to have shown sufficient signs to allow a reasonably accurate diagnosis, an entirely sound ruling given the dictionary definition of "manifest." Webster's Third New International Dictionary 1375 (1981). *Karagon* relied on *Mayer* to decide that a diagnosis must have been made in the precoverage period before benefits can be denied. However, *Mayer* does not assist in cases like *Karagon, Hughes* and this one, cases that do not deal with language like "manifest," but instead with broader language such as "services" in the first two cases, and "services or advice" in this one.

Third, *Hughes* has misread *Cury* and *Marshall.* Those cases did not simply focus on the absence of a requirement for diagnosis. Instead, they both analyzed the language at issue and determined that it was unambiguous. *See Cury,* 737 F.Supp. at 854, quoted above, and *Marshall, supra,* 1992 WL 554314 at *3. They discussed diagnosis because the plaintiffs in those cases had argued that diagnosis was required before coverage could be denied.

We turn now to the plaintiff's second point—that the examination on December 11,

1995, and the ultrasound on December 21, 1995, constituted service or advice for her condition of developing benign growths, not for thyroid cancer. The evidence is undisputed that the lump on her thyroid was found as part of a routine examination to monitor benign growths, and the lump was thought to be just another such growth, until the thyroidectomy was performed on February 16, 1996, after the effective date of her coverage.

There is some support for this position in *Hardester II, supra,* and *Pitcher v. Principal Mutual Life Insurance Co.,* 93 F.3d 407 (7th Cir.1996). In *Hardester II,* the Fourth Circuit, splitting seven to six in an en banc decision, adopted the dissent in *Hardester I.* The court held that a pre-existing-conditions exclusion similar to the one in the instant case did not bar the plaintiff from health coverage for a cancerous breast lump under an ERISA plan. The *Hardester* plaintiff had a history of fibrocystic breast disease and had routine examinations done, one of which led her examining physician to suggest a follow-up exam by another doctor because of changes, including an elongated "ropey" mass in the left breast. This second doctor had a mammogram done not only because of the mass but also because it had been over a year since the previous mammogram, and he would have had one done in any event. This led to a biopsy. Both the mammogram and biopsy were performed after the effective date of coverage. The Fourth Circuit ruled that treatment for the cancer was not precluded because the cancer was hidden by the mass until the biopsy was performed, and all prior treatment had been for the ropey mass. *Pitcher* is similar to *Hardester II* because the plaintiff there was also being treated for fibrocystic breast disease and a routine examination led to the discovery of the cancer, hidden by the fibrocystic breast disease, after the effective date of coverage.

Thus, this case could be said to be the same as *Hardester II* and *Pitcher* because, as in those cases, the plaintiff here had a history of growths and lumps for which she sought routine examinations, and one of these exams led to her cancer being discovered by biopsy after the effective date of her coverage. However, the comparison breaks down because McWilliams's lump was not discovered because of another mass that had been hiding it. The nurse-practitioner discovered the lump on December 11, 1995, and subsequent service was focused on it. The case is thus more like *Bullwinkel.* As in that case, the one lump led to the ultrasound and biopsy. Further, the plaintiff does not contend that the lump was not cancerous before the effective date. Moreover, unlike in *Hardester II,* her nurse-practitioner does not aver that she would have recommended an ultrasound in any event.

Thus, under *Bullwinkel,* the plaintiff had no coverage for expenses related to this lump because at the very least she received advice for it on December 11, 1995, when her nurse-practitioner recommended an ultrasound because of it, and services for it on December 21, 1995, when the ultrasound was conducted. Further, just as in *Bullwinkel,* it is irrelevant that her nurse-practitioner only suspected cancer as a remote possibility. The pre-existing-conditions clause does not require a diagnosis or that the patient or her doctor have defined her illness.

C. *The Clarity of the Pre–existing–Conditions Clause.*

■ The plaintiff also argues that she is entitled to coverage because the pre-existing-conditions clause is not conspicuous, plain and clear, thus defeating her reasonable expectations of coverage. Her argument is as follows:

> To determine what pre-existing conditions are excluded under the Plan, one must read three separate definitions and two exclusions sections (medical benefits and disability benefits) that modify the combined definitions by appending the additional requirement of "treatment." None of the above terms are adequately indexed or conspicuously noted in the Plan or the Booklet.

Plaintiff's Supporting Brief at pps. 5–6. In support, she cites *Saltarelli v. The Bob Baker Group Medical Trust,* 35 F.3d 382 (9th Cir.1994).

The plaintiff attacks the wording of both the summary plan description (SPD) and the

plan itself. We have not been provided with an entirely legible copy of the SPD, so we will confine our analysis to the plan, the defendants' exhibit A.

In *Saltarelli*, the Ninth Circuit refused to enforce a pre-existing-conditions exclusion when it was in an SPD that was 43 pages, singled-spaced and did not set forth specifically in the table of contents that there was such an exclusion. Moreover, the exclusion was found only in the "Definitions" chapter, rather than "in the operative clauses of the plan," *id.* at 384, and could only be discerned by reading three separate definitions for "Pre–Existing Condition," "Illness," and "Injury."

Assuming *Saltarelli* applies here, we conclude it is distinguishable. The table of contents for the CTI plan lists exclusions and short-term disability benefits and these are set forth in the operative clauses of the plan. Moreover, the plan Article on short-term disability benefits has a separate paragraph on exclusions immediately following the section detailing disability coverage. It is true that the plan does set forth three separate definitions for "Pre–Existing Condition," "Illness," and "Injury," but this element does not overcome the fact that there are separate substantive provisions for pre-existing conditions and that these provisions are discernible from the table of contents.

### IV. *Conclusion.*

Our decision leads to a harsh result. Through no fault of her own, the plaintiff has no coverage for $8,955.85 in medical bills and an unpaid claim for $2,035.80 in short-term disability benefits. However, we cannot grant her relief under the theories of recovery she has presented, and we cannot alter the terms of the plan to satisfy some perceived public-policy objection to the pre-existing-conditions exclusion. *See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 124 F.3d 471, 476 (3d Cir. 1997).

We note that the defendants also argue that CoreSource is not a proper defendant for the recovery of benefits because it only supervised the plan. The defendants have cited no authority for this proposition, and

we decline to enter summary judgment in favor of CoreSource on this basis.

We will issue appropriate order.