

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2002

# Lawson v. Fortis Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 01-3316

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Lawson v. Fortis Ins Co" (2002). *2002 Decisions.* Paper 532.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/532

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 22, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3316, 01-3355

JOSEPH LAWSON; TAMMY MALATAK,
ON BEHALF OF MINOR CHILD ELENA LAWSON

v.

FORTIS INSURANCE COMPANY,

Appellant/Cross-Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Dist. Court No. 00-cv-06538)
District Court Judge: Marvin Katz

Argued on July 15, 2002

Before: SCIRICA, ALITO, and FUENTES, Circuit  Judges.

(Opinion Filed: August 22, 2002)

ANDREW F. SUSKO (Argued)
White & Williams
One Liberty Place
Suite 1800
Philadelphia, PA 19103
Counsel for Appellant/
Cross-Appellee

MICHAEL J. SALMANSON (Argued)
10th Floor
1515 Locust Street
Philadelphia, PA 19102
Counsel for Appellees/
Cross-Appellants

OPINION OF THE COURT

ALITO, Circuit Judge:

Minor child Elena Lawson ("Elena") was covered under a
health insurance policy that her father bought from
Defendant, Fortis Insurance Company. Two days prior to
the effective date of the policy, Elena went to the emergency
room for treatment of what was initially diagnosed as a
respiratory tract infection, but which was discovered to be
leukemia one week later, after the effective date of the
policy. Fortis denied coverage of medical expenses relating

to the leukemia on the ground that it was a pre-existing condition for which Elena had received treatment prior to the effective date of the policy. Elena's parents ("Plaintiffs"), acting on her behalf, sued for breach of contract, and the District Court granted their motion for summary judgment.

In this appeal, Fortis argues that the pre-existing condition language of the insurance policy does not require accurate diagnosis of the condition, but merely receipt of treatment or advice for the symptoms of it. Fortis claims that because Elena was treated for symptoms of leukemia before the effective date of the insurance policy, the leukemia was a pre-existing condition. Plaintiffs respond that the leukemia was not pre-existing because one cannot receive treatment "for" a condition without knowledge of what the condition is. We find that Plaintiffs' reading of the pre-existing condition language is reasonable and that the ambiguity in the policy should be construed against the insurance company. Therefore, we affirm the District Court's grant of summary judgment for Plaintiffs on their claim for benefits under the policy. We also affirm the District Court's grant of summary judgment for Fortis on the Plaintiffs' bad faith claim.

2

I.

A.

On October 7, 1998, Joseph Lawson ("Lawson") purchased the Fortis short-term medical insurance policy to cover himself and his daughter, Elena Lawson. The policy became effective two days later, on October 9. On October 7, the same day Lawson applied for the insurance policy, Elena's mother, Tammy Malatak, took Elena to the emergency room at Palmerton Hospital in Palmerton, Pennsylvania. Elena had a dry, hacking cough, a fever, an elevated pulse rate, and a swollen right eye. The emergency room physician, Dr. Shailesh Parikh, diagnosed Elena with an upper respiratory tract infection and prescribed an antibiotic and anti-allergy medication. Dr. Parikh further advised Ms. Malatak to take Elena for a follow-up visit to her family physician or to bring her back to the emergency room if the symptoms did not improve in a few days. Because the symptoms persisted, on October 13, Ms. Malatak took Elena to the family physician, Dr. Narendra Ambani.

On October 14, 1998, Elena's grandmother, a registered nurse, took Elena to a pediatrician, Dr. Mira Slizovskaya ("Dr. Slizovsky"), who ordered Elena to undergo more tests and diagnosed her with leukemia. On October 15, Elena was transferred to the Children's Hospital of Philadelphia ("CHOP") under the care of Dr. Beverly Lange. At CHOP, Elena underwent chemotherapy and other treatment that has since resulted in the remission of her leukemia.

B.

The insurance policy at issue expressly excludes coverage for a pre-existing condition, which is defined as a "Sickness, Injury, disease or physical condition for which medical advice or treatment was recommended by a Physician or received from a Physician within the five (5) year period preceding that Covered Person's Effective Date of Coverage." The policy defines "sickness" as an "illness, disease or condition which is diagnosed or treated while

this policy is in force." There is no dispute that the relevant sickness here is leukemia.

Lawson and Malatak, on behalf of Elena, filed a claim for payment of the CHOP medical bills under the Fortis policy. Dr. Raymond Brumblay, Fortis's Medical Director, investigated Elena's course of treatment and concluded that "[w]hile the evaluation [at the Palmerton Emergency Department] failed to diagnose leukemia, advice and treatment for those symptoms were received from a physician. This meets the policy definition of a pre-existing condition." App. at 96. Dr. Brumblay determined that Elena had a two-and-a-half week history of fever preceding her diagnosis of leukemia, and he therefore concluded that the symptoms for which she was evaluated and treated on October 7, 1998, were those of leukemia. Fortis thus denied Plaintiffs' claim pursuant to the policy's pre-existing condition exclusion.

Plaintiffs appealed the denial to Fortis's Appeal Review Committee, which concluded that the definition of a pre-existing condition does not require a correct diagnosis of the condition at the time that it is treated. Fortis thus denied Plaintiffs' appeal.

C.

Plaintiffs brought a breach of contract and bad faith action against Fortis for its denial of coverage. Plaintiffs moved for summary judgment on the breach of contract claim, and Fortis filed a cross-motion for summary judgment on both claims. The District Court heard oral argument on the motions for summary judgment. The Court granted Plaintiffs' motion on the breach of contract claim, and granted Fortis's motion on the bad faith claim. Lawson v. Fortis Insurance Co., 146 F. Supp. 2d 737 (E.D. Pa. 2001).

The District Court found that the definition of a pre-existing condition under the policy is ambiguous. According to the District Court, the language could be read as providing either a subjective standard requiring an accurate diagnosis of the condition at the time of treatment or an objective standard requiring only general treatment or

advice, independent of an accurate diagnosis. Construing ambiguity against the drafter and choosing the contract interpretation most favorable to Plaintiffs, the District Court concluded that "in order to be treated for leukemia, there must have been some awareness that the disease existed at the time treatment or advice was rendered." Id. at 745. Finding that nobody even suspected leukemia at the time of Elena's treatment on October 7, 1998, the District Court granted summary judgment for Plaintiffs on the breach of contract claim. The District Court then directed the parties to stipulate as to Plaintiffs' medical expenses, and on July 27, 2001, the District Court entered judgment against Fortis in the amount of $713,901.12 plus prejudgment interest. Fortis appeals from this judgment. The District Court also granted summary judgment for Fortis on Plaintiffs' bad faith claim, and Plaintiffs cross-appeal from this judgment.1

II.

Fortis argues that the insurance policy's exclusion of pre-existing conditions contains no requirement that the condition be accurately diagnosed or appropriately treated before the effective date of the policy. Fortis claims that the pre-existing condition exclusion applies when a claimant receives medical treatment for the symptoms of a condition that later proves to be one for which coverage is sought under the policy. Thus, Fortis asserts that the District Court's decision contravened the plain meaning of the policy, principles of contract construction, and clear legal precedent. We disagree.

A.

Straightforward language in an insurance policy should be given its natural meaning. In keeping with the rule of contra proferentem, however, ambiguous terms should be

_____

1. Our standard of review is plenary. Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) ("When reviewing an order granting summary judgment we exercise plenary review and apply the same test the district court should have applied.").

strictly construed against the insurer. Medical Protective Co. v. Watkins, 198 F.3d 100, 105 (3d Cir. 1999). The District Court reasoned that the contract was ambiguous as to whether the pre-existing condition exclusion required a diagnosis of the condition, and it therefore construed the policy in favor of Plaintiffs. The central issue in this case is whether receiving treatment for the symptoms of an unsuspected or misdiagnosed condition prior to the effective date of coverage makes the condition a pre-existing one under the terms of the insurance policy. In other words, we must determine whether it is possible to receive treatment "for" a condition without knowing what the

condition is.

We review de novo the District Court's conclusion that the definition of a pre-existing condition in the contract is ambiguous. Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 101 (3d Cir. 1986). "A contract is ambiguous if it: (1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning." Cury v. Colonial Life Insurance Company of America, 737 F. Supp. 847, 853 (E.D. Pa. 1990).

B.

Both state and federal courts have interpreted pre-existing condition language in health insurance contracts differently. The District Court relied most heavily on Hughes v. Boston Mutual Life Insurance Co., 26 F.3d 264 (1st Cir. 1994). In Hughes, the insured claimant suffered from and was treated for non-specific symptoms of multiple sclerosis prior to the effective date of his disability policy, but the condition was not diagnosed until after the policy took effect. The First Circuit found both the insurance company's and the claimant's interpretations of the policy to be reasonable, and it therefore concluded that the pre-existing condition exclusion was ambiguous. Id. at 269-70. In particular, the ambiguity was due to the lack of clarity regarding what constitutes treatment "for" a condition. Id. at 269.

Hughes notwithstanding, some courts have interpreted

6

language similar to the pre-existing condition provision at issue in this case not to require a diagnosis of the condition. See, e.g., Bullwinkel v. New England Mutual Life Insurance Co., 18 F.3d 429 (7th Cir. 1994) (holding that discovery of a breast lump before the defendant's insurance coverage began triggered the pre-existing condition exclusion although the lump was not definitively diagnosed as cancer until after coverage began);2 Marshall v. UNUM Life Insurance Co., 13 F.3d 282 (8th Cir. 1994) (finding a pre-existing condition where the claimant was treated for muscle pain, which was later diagnosed as chronic fatigue syndrome); McWilliams v. Capital Telecommunications Inc., 986 F. Supp. 920 (M.D. Pa. 1997) (disagreeing with Hughes, following Bullwinkel and Cury, and concluding that the insurance policy language did not limit pre-existing conditions to those that were diagnosed before the effective date of the plan); Cury v. Colonial Life Insurance Company of America, 737 F. Supp. 847, 854 (E.D. Pa. 1990) (holding that treatment for symptoms of undiagnosed multiple sclerosis activated the pre-existing condition exclusion and stating that "[t]here is no requirement that a diagnosis, definite or otherwise, of the pre-existing condition must be made during the pre-existing condition period"); see also Mutual Life Insurance Company of New York v. Bohannon, 488 S.W.2d 476 (Tex. Civ. App. 1972) (finding pre-effective

coverage date treatment for anemia, which was a misdiagnosis of the underlying condition of blind loop syndrome, to constitute treatment for a pre-existing condition); Dowdall v. Commercial Travelers Mutual Accident Association of America, 181 N.E.2d 594, 596 (Mass. 1962) (concluding that a definitive diagnosis of multiple sclerosis was not required for treatment of symptoms to qualify as treatment of a pre-existing condition). The Seventh Circuit in Bullwinkel reasoned that "even though[the claimant] did not know the lump was cancerous in July [before the effective date of her insurance policy], her visit with the

_____

2. In Bullwinkel, however, the Seventh Circuit explicitly limited the reach of its holding to the specific facts of that case. 18 F.3d at 433 (observing that "this case is unique" and that the court was making "no statement about what might happen if an attorney in a future case presents different arguments and authority to the court").

7

doctor in that month concerning the lump actually concerned cancer. It follows that [the claimant] was 'seen' and 'treated' and incurred medical expenses for her cancer in July." Therefore, the court concluded, "any post-policy treatment concerning the same condition is not covered." 18 F.3d at 432. In Cury, the District Court similarly held that "[b]ecause a diagnosis during the pre-existing condition period is not necessary," the only issue was whether "plaintiff received treatment, consultation, medical care, medical services, diagnostic test, or prescribed drugs during the pre-existing condition period." 737 F. Supp. at 855. The reasoning underlying these decisions is that the pre-existing condition language is clear and unambiguous that treatment for a condition does not require accurate diagnosis of the condition.

Other courts, however, like the First Circuit in Hughes, have reached a different result and found that treatment for a condition requires some awareness on the part of the insured or the physician that the insured is receiving treatment for the condition itself. See, e.g. , Pitcher v. Principal Mutual Life Insurance Co., 93 F.3d 407, 412 (7th Cir. 1996) ("[W]e hold that Pitcher did not receive a 'treatment or service' for breast cancer prior to September 17, 1992 because--as the district court found--she was being monitored for the longstanding fibrocystic breast condition and not cancer during the pre-coverage period.");3 Ross v. Western Fidelity Insurance Co., 881 F.2d 142, 144 (5th Cir. 1989) ("[T]here is at least a reasonable argument that, under [a pre-existing condition exclusion], treatment for a specific condition cannot be received unless the specific condition is known."); Van Volkenburg v. Continental Casualty Insurance Co., 971 F. Supp. 117, 122 (W.D.N.Y. 1996) (finding reasonable the plaintiff 's argument that to obtain advice or treatment regarding a

_____

3. In Pitcher, the Seventh Circuit distinguished Bullwinkel, in which the

plaintiff suffered from only breast cancer and not cystic fibrosis also, as in Pitcher. Because Bullwinkel's visit to the doctor was prompted solely by a concern that the lump in her breast might be cancerous, the visit and subsequent treatment actually "concerned" cancer. In contrast, Pitcher thought her pre-coverage treatment was for cystic fibrosis, but the lump actually turned out later to be cancer. Pitcher, 93 F.3d at 415.

8

medical "condition," one must first have some awareness that the "condition" exists); see also In re Estate of Monica Ermenc v. American Family Mutual Insurance Co., 585 N.W.2d 679, 682 (Wis. Ct. App. 1998) (holding that where the claimant's cancer was not evident as a condition before the coverage period began and where the symptoms before diagnosis were non-specific, coverage should not be excluded under the pre-existing condition clause); Mannino v. Agway, Inc. Group Trust, 192 A.D.2d 131 (N.Y. App. Div. 1993) (finding the term "condition" to be ambiguous as to whether it meant an actually diagnosed disease or any symptoms of an undiagnosed disease for which coverage was sought). All of these courts have reasoned that it is not logical to permit non-specific symptoms, which could be caused by a number of different sicknesses, to be used later as a retroactive trigger for exclusion as a pre-existing condition. These courts reached the conclusion that the pre-existing condition clauses in insurance policies are "susceptible to reasonable but differing interpretations" and are therefore ambiguous. Van Volkenburg, 971 F. Supp. at 123.

All of these cases involve insurance policies with substantially similar pre-existing condition language and similar factual scenarios. Of the federal courts of appeals, the First, Fifth, and Seventh Circuits have followed the approach taken in this case by the District Court, finding the contract language ambiguous. The Seventh and Eighth Circuits, however, have gone the other way and interpreted pre-existing condition language not to require diagnosis of the condition being treated. Thus, the relevant cases do not dictate a clear answer here.

C.

In this case, Elena did not receive advice or treatment for leukemia before the effective date of coverage, so Plaintiffs' interpretation of the pre-existing condition language in the Fortis insurance policy should prevail. At a minimum, the contract language is ambiguous, and thus it should be construed against Fortis.

The Fortis insurance policy excludes coverage for a

9

"Sickness, Injury, disease or physical condition for which medical advice or treatment was recommended by a Physician or received from a Physician within the five (5)

year period preceding that Covered Person's Effective Date of Coverage." There is no doubt that the "sickness" here is leukemia. Therefore, the key word in the pre-existing condition exclusion for our purposes is "for." Elena received treatment "for" what were initially diagnosed as symptoms of a respiratory tract infection. Therefore, the treatment she received was not "for" leukemia, but "for" a respiratory tract infection.[4]

The word "for" connotes intent. Webster's Dictionary states that "for" is "used as a function word to indicate purpose." Webster's Ninth New Collegiate Dictionary 481 (1986). Black's Law Dictionary similarly states that the word "connotes the end with reference to which anything is, acts, serves, or is done. In consideration of which, in view of which, or with reference to which, anything is done or takes place." Black's Law Dictionary 579-80 (5th ed. 1979). The word "for" therefore has an implicit intent requirement. Applied to this case, none of Elena, her parents, and the treating physician, Dr. Parikh, intended or even thought on October 7, 1998, that Elena was receiving medical advice or treatment "for" leukemia. In short, it is hard to see how a doctor can provide treatment "for" a condition without knowing what that condition is or that it even exists. Thus, in our view, the best reading of the contract language in this case is for coverage of Elena's leukemia treatment. At worst, the language is ambiguous and must therefore be read in favor of the insureds.

Although Fortis contends that its position is supported by the district court's decisions in Cury and McWilliams, those cases are distinguishable. In both Cury and McWilliams, there was no definite diagnosis, but either the physician or the claimant had a specific concern regarding the patient's condition. In Cury, the doctor suspected multiple sclerosis as "likely" or "most likely" before the

_____

4. We need not resolve the factual question whether she received treatment for what were actually symptoms of leukemia on October 7, 1998.

effective date of Cury's insurance policy, 737 F. Supp. at 851, and in McWilliams, the claimant received an ultrasound on her thyroid lump, which had not yet been diagnosed as thyroid cancer, 986 F. Supp. at 924. In these cases, because the claimants suspected a particular condition when they saw their physicians, it might make sense to say that the claimants had received advice or treatment "for" their respective conditions, although they had not been definitively diagnosed. In both instances, a particular condition was suspected; treatment, advice, or testing for that suspected condition was provided; and the pre-effective date treatment, advice, or testing turned out to be "for" the condition that was ultimately diagnosed.

In this case, however, the treatment Elena initially

received for a respiratory tract infection was not the appropriate treatment for leukemia, and thus it does not make sense to say that she received treatment "for" leukemia when the actual condition was not suspected and the treatment was in any event wrong. In short, for the purposes of what constitutes a pre-existing condition, it seems that a suspected condition without a confirmatory diagnosis is different from a misdiagnosis or an unsuspected condition manifesting non-specific symptoms, as was the case here. When a patient seeks advice for a sickness with a specific concern in mind (e.g. , a thyroid lump, as in McWilliams, or a breast lump, as in Bullwinkel) or when a physician recommends treatment with a specific concern in mind (e.g., a "likely" case of multiple sclerosis, as in Cury), it can be argued that an intent to seek or provide treatment or advice "for" a particular disease has been manifested. But when the patient exhibits only non-specific symptoms and neither the patient nor the physician has a particular concern in mind, or when the patient turns out not to have a suspected disease, it is awkward at best to suggest that the patient sought or received treatment for the disease because there is no connection between the treatment or advice received and the sickness. Here, there is no evidence that the possibility that Elena's condition was actually leukemia ever entered the minds of Elena's parents or Dr. Parikh. Therefore, it would not make sense to say that Dr. Parikh offered medical advice or treatment for Elena's leukemia.

11

In any event, to the extent that our decision here is at odds with Cury and McWilliams, we find the analysis in those cases unpersuasive because they focus primarily on the absence of a diagnosis requirement rather than simply construing the language of the policy. That is, Cury and McWilliams focused exclusively on the absence of a requirement for diagnosis in the insurance policies"without seriously considering whether the language concerning treatment 'for' a particular condition is ambiguous." Hughes, 26 F.3d at 270 n.5.

Although we base our decision on the language of the policy, we note that considering treatment for symptoms of a not-yet-diagnosed condition as equivalent to treatment of the underlying condition ultimately diagnosed might open the door for insurance companies to deny coverage for any condition the symptoms of which were treated during the exclusionary period. "To permit such backward-looking reinterpretation of symptoms to support claims denials would so greatly expand the definition of preexisting condition as to make that term meaningless: any prior symptom not inconsistent with the ultimate diagnosis would provide a basis for denial." In re Estate of Monica Ermenc, 585 N.W.2d at 682. In Ranieli v. Mutual Life Insurance Company of America, 413 A.2d 396 (Pa. Super. Ct. 1979), the Pennsylvania Superior Court held that recovery under a pre-existing condition clause was "conditioned on the fact that prior to the stipulated date,

the sickness was not manifest, nor could it have been diagnosed with reasonable certainty by one learned in medicine." Id. at 401. The court found such a policy to be "reasonable and salutary" because "[t]o deny coverage because of an incipient disease that has not made itself manifest . . . is to set an unconscionable trap for the unwary insured." Id.

At a minimum, the pre-existing condition language in Fortis's insurance policy is susceptible to more than one reasonable interpretation and is therefore ambiguous. See Myrtil v. Hartford Fire Insurance Co., 510 F. Supp. 1198, 1202 (E.D. Pa. 1981) ("If reasonably intelligent people differ as to the meaning of a policy provision, ambiguity exists."); Cohen v. Erie Indemnity Co., 432 A.2d 596, 599 (Pa. Super.

12

Ct. 1981) ("The mere fact that several appellate courts have ruled in favor of a construction denying coverage, and several others have reached directly contrary conclusions, viewing almost identical policy provisions, itself creates the inescapable conclusion that the provision in issue is susceptible to more than one interpretation."). Therefore, we construe the insurance policy strictly against Fortis and find that Elena's leukemia was not a pre-existing condition under the language of the policy.

III.

As to Plaintiffs' bad faith claim, we affirm the District Court's grant of Fortis's motion for summary judgment. Although we do not find the cases on which Fortis relies to be persuasive, this authority supports the District Court's decision on the bad faith issue. Plaintiffs claim that Fortis failed to review all of the medical records and ignored relevant evidence, but without more, this does not rise to the level of frivolous, reckless disregard, or lack of reasonable basis, especially in a situation, like this one, that involves medical records lacking in certainty of diagnosis. Cf. Terletsky v. Prudential Property and Casualty Insurance Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

For the foregoing reasons, we affirm the District Court's judgment granting Plaintiffs' motion for summary judgment on the breach of contract claim and granting Fortis's motion for summary judgment on the bad faith claim.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13