LEON JORDAN, District Judge.
Respondents appeal the district court’s grant, on the ground of ineffective assistance of trial counsel, of Kent Jay Goldy’s 28 U.S.C. § 2254 petition for writ of habe-as corpus. For the reasons that follow, we REVERSE.
I.
A jury convicted Goldy of possessing a silencer in violation of Michigan Compiled Laws § 750.224(l)(b) and of carrying a concealed weapon in violation of Michigan Compiled Laws § 750.227(2). He was sentenced to five years of probation. The facts underlying the conviction are adequately set forth in the district court’s memorandum opinion, Goldy v. Tierney, 548 F.Supp.2d 422 (E.D.Mich.2008), and need not be repeated herein.
The Michigan Court of Appeals affirmed the conviction, notwithstanding Goldy’s arguments that he was denied the effective assistance of trial counsel and that the jury instruction on the silencer charge inadequately conveyed the mens rea of that offense. The Michigan Supreme Court denied review.
Goldy then filed his petition for habeas corpus relief. The district court conducted an evidentiary hearing and found Goldy’s trial counsel ineffective for two reasons: (1) failing to object to a faulty jury instruction; and (2) advising Goldy not to testify after an adverse evidentiary ruling. The district court ordered the conviction expunged. The present appeal followed.
II.
We review a district court’s legal conclusions in a habeas petition de novo, and we review factual findings for clear error. Miller v. Webb, 385 F.3d 666, 671 (6th Cir.2004). In analyzing an ineffective assistance claim, “we evaluate the totality of the evidence—‘both that adduced at trial, and the evidence adduced in the habeas proceedingfs].’” Wiggins v. Smith, 539 *171 U.S. 510, 536, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (emphasis omitted)).
Under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), Goldy’s application for habeas corpus relief cannot be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). A state court decision involves an unreasonable application of clearly established Supreme Court precedent when it correctly identifies the governing legal principle but applies that principle in an objectively unreasonable manner. Williams, 529 U.S. at 407-09, 120 S.Ct. 1495.
Our review of Goldy’s ineffective assistance claim is governed by the familiar two-prong test of Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Goldy must first show that his trial counsel’s representation “fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. Our inquiry must be whether his attorney’s performance was “reasonable considering all the circumstances,” and we “should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Id. at 688, 690, 104 S.Ct. 2052. Second, Goldy “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052.
III.
Michigan Compiled Laws § 750.224(l)(b) prohibits possession of a silencer. “Silencer” is defined in material part as, “A device for muffling, silencing, or deadening the report of a firearm.” Mich. Comp. Laws § 750.224(4)(a). In his opening statement, trial counsel argued Goldy’s position that the device in question was not a silencer but rather “a barrel extender, which ... is part of the conversion kit that transforms a pistol into a rifle.” Counsel further informed the jurors that Goldy “does intend to testify,” and he outlined the expected content of that testimony.
Prior to opening statements, the judge addressed defense counsel’s objection to the potential testimony of Goldy’s former coworker Eric White.
[Defense Counsel]: ... [I]t’s my understanding there’s going to be testimony that Eric White ... met him in a parking lot.... He claims that this gun that they’re calling — where it has, they claim it’s a silencer — that my client took it out and shot it in the parking lot and it sounded quieter than a pebble gun. And I think they want to introduce testimony relative to that....
The Court: ... Are you planning to call Mr. White?
[Prosecution]: Yes. In fact—
The Court: What are you calling him for?
[Prosecution]: Well, he would provide information that the defendant has in the past been in possession of a silenc *172 er. He’s saying that this is a barrel extender.
The Court: — I guess whether he’s been, in the past, in possession of a silencer hasn’t got anything to do with this particular case here.
The Court: [To Prosecutor] ... with all due respect, I don’t see whether he may have owned one in the past is more prejudicial than probative [sic]. It doesn’t go to the issue of this particular item....
Although this interplay did not result in a definitive ruling from the bench, the clear implication is that White would not be allowed to testify. We note that our review of this exchange in its entirety does not make clear every parameter of White’s intended testimony, as several statements were interrupted midsentence in the rapid dialogue between the judge and the attorneys.
Later in the trial, Goldy’s counsel again expressed concern regarding White.
[Defense Counsel]: Eric White ... he’s the one that says that Mr. Goldy and him were in the parking lot and he shot this — that barrel extender in [sic] parking lot....
The Court: I’ve already said I thought that was irrelevant.
[Defense Counsel]: But every time I go into it a little bit ... then I’m told that I opened the door. I’m trying to keep it out ...
The Court: Well, if your client is going to say he never shot the gun with that on it ...
[Defense Counsel]: I’m not going to have him say that.
The Court: And if he testified to that, then definitely that witness becomes important.
The Court: If your client denies firing that gun with that item attached to it, then this guy’s testimony becomes pertinent.
[Prosecution]: I’m going to ask Mr. White — -I’m going to ask, if he [Goldy] testifies, which is his right to do or not to do, I’m going to ask him on May 20 do you recall being with Eric White and firing that weapon with ... this item on it, and if he says yes, he says yes. If he says no ...
The Court: If he says no, then Mr. White testifies.
[Defense Counsel]: ... Your Honor, that’s more prejudicial ...
The Court: No, it’s not, at that point it’s his credibility ...
Again, our review of this exchange in its totality does not make clear the full scope of White’s intended testimony, as the prosecution’s explanation was again cut off midsentence.
At the district court hearing, both Goldy and his trial counsel testified that the ruling regarding White caused them to decide not to put Goldy on the stand. Goldy stated that he “absolutely” wanted to testify but followed counsel’s advice not to do so in order to exclude White. In response to questioning by Goldy’s appellate attorney, trial counsel also testified that he was aware White would testify that Goldy referred to the device as “a silencer.” Counsel further confirmed his understanding that the prosecution intended “to ask him about whether or not Mr. Goldy ever shot that and whether they ever talked about it being a silencer.” In response to additional questioning from appellate counsel, Goldy’s trial attorney affirmed that he “obviously anticipated that this *173 [White’s testimony] was going to be a problem.”[1]
The state court of appeals did not squarely address the issue of White’s testimony but stated generally that Goldy’s decision not to testify was the “sort of strategic decision ... that we do not second guess.” See People v. Goldy, No. 246501, 2004 WL 1392404, at *3 (Mich.Ct.App. June 22, 2004). We therefore apply modified AEDPA deference, focusing on “the result reached not the reasoning used.” See Hawkins v. Coyle, 547 F.3d 540, 546-47 (6th Cir.2008).
The state court did not unreasonably apply Strickland to Goldy’s decision not to testify. Goldy’s counsel was aware that White would testify that Goldy knew the device at issue was a silencer. That testimony would be damning, since Goldy had maintained that he viewed the device as only a “barrel extender.” It follows that White’s testimony would have likely been admissible to show knowledge or absence of mistake. See Mich. R. Evid. 404(b)(1). Although the prosecuting attorney was generally cut off whenever he tried to explain the purpose of White’s testimony, Goldy’s counsel should have been aware of the lurking danger, and thus could reasonably advise Goldy not to take the stand.
The district court observed that “it is reasonably probable that, if presented with Rule 608(b) and his prior ruling, the trial court would have ruled that White’s testimony could not be used to impeach Petitioner on [a] collateral matter.” Goldy v. Tierney, 548 F.Supp.2d 422, 428 (E.D.Mich.2008). It is, however, also reasonably probable that, if presented with Rule 404(b), the trial judge would have considered White’s testimony and deemed it relevant to show knowledge or absence of mistake. “Counsel’s strategy choice was well within the range of professionally reasonable judgments,” Strickland, 466 U.S. at 699, 104 S.Ct. 2052, and Goldy has not overcome the presumption that his attorney’s decision was sound trial strategy. “There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.” Id. at 689, 104 S.Ct. 2052.
Trial counsel made a strategic decision to advise Goldy not to testify because counsel predicted that the value would be outweighed by the damage of White’s impeachment testimony. That assistance was constitutionally adequate under Strickland. Although the Michigan Court of Appeals did not fully address this claim, its application of Strickland was not objectively unreasonable.
IV.
Goldy also argues that his trial counsel was ineffective in not objecting to a jury instruction on the silencer charge that inadequately conveyed the mens rea of the offense. Consistent with the Michigan Standard Jury Instructions, the trial court charged the jury as follows:
Now, the defendant is also charged with the crime of possessing a muffler or silencer. A muffler or silencer is a device for deadening or muffling the sound of a firing gun. Now, to prove this charge, the prosecution must prove each of the following elements beyond a reasonable doubt. And there’s just two.
*174 First, that the defendant knowingly possessed a muffler or silencer.
And second, that at the time he possessed it, the defendant knew that the muffler or silencer was a weapon.
Goldy contends, and the district court agreed, that this pattern charge does not “require[] the prosecution to prove that Petitioner was aware of ‘the features’ of the device alleged to be a silencer ‘that brought it within the scope of M.C.L. 750.224.” Goldy v. Tierney, 548 F.Supp.2d at 480 (quoting Staples v. United States, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).
The state court of appeals held that Goldy waived this argument because he did not object to the charge. People v. Goldy, No. 246501, 2004 WL 1392404, at *3 (Mich.Ct.App. June 22, 2004). The appellate court further commented, however, that “the general instruction that was given without objection was sufficient to inform the jurors of the elements of the offense.” Id. at *2. The state court result was not an unreasonable application of Strickland.
Michigan Compiled Laws § 750.224(l)(b) prohibits possession of a silencer, defined in material part as, “A device for muffling, silencing, or deadening the report of a firearm.” Mich. Comp. Laws § 750.224(4)(a) (emphasis added). That definition (“A device for ... ”) was incorporated in the jury instructions. As Goldy himself points out in his appellate briefing, “The word ‘for’ connotes intent.” See Lawson ex rel. Lawson v. Fortis Ins. Co., 301 F.3d 159, 165 (3d Cir.2002); see also Goldy v. Tierney 548 F.Supp.2d 422, 429 (E.D.Mich.2008) (“Petitioner argues that the use of the word ‘for’ connotes intent.”). Therefore, the jury was required to find that Goldy knowingly possessed a device intended to deaden or muffle the sound of a firing gun. The jury instruction therefore adequately conveyed the necessary mens rea, and the state court’s conclusion that defense counsel met constitutional standards was thus a reasonable application of Supreme Court precedent.
V.
As explained herein, Goldy’s state court proceedings did not result in a decision that was contrary to or an unreasonable application of Supreme Court law. We accordingly reverse the decision of the district court.

. As further evidence that Goldy's decision not to testify was a joint strategy, trial counsel responded affirmatively when asked by appellate counsel, "And you felt that if Mr. White came in, it would be damaging. He [Goldy] agreed. And you jointly — you recommended he not take the stand, and he followed that advice willingly. Is that a fair statement?"