NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0632n.06

No. 08-1646

**FILED**
**Sep 10, 2009**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENT JAY GOLDY, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ERICA TIERNEY and | ) | DISTRICT OF MICHIGAN |
| KENNETH J. AUD, | ) | |
| | ) | |
| Respondents-Appellants. | ) | |

Before: **CLAY** and **ROGERS**, Circuit Judges; **JORDAN**, District Judge.[*]

**LEON JORDAN**, District Judge. Respondents appeal the district court's grant, on the ground of ineffective assistance of trial counsel, of Kent Jay Goldy's 28 U.S.C. § 2254 petition for writ of habeas corpus. For the reasons that follow, we REVERSE.

**I.**

A jury convicted Goldy of possessing a silencer in violation of Michigan Compiled Laws § 750.224(1)(b) and of carrying a concealed weapon in violation of Michigan Compiled Laws § 750.227(2). He was sentenced to five years of probation. The facts underlying the conviction are adequately set forth in the district court's memorandum

---

[*] The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

No. 08-1646
*Goldy v. Tierney, et al.*

opinion, *Goldy v. Tierney*, 548 F. Supp. 2d 422 (E.D. Mich. 2008), and need not be repeated herein.

The Michigan Court of Appeals affirmed the conviction, notwithstanding Goldy's arguments that he was denied the effective assistance of trial counsel and that the jury instruction on the silencer charge inadequately conveyed the *mens rea* of that offense. The Michigan Supreme Court denied review.

Goldy then filed his petition for habeas corpus relief. The district court conducted an evidentiary hearing and found Goldy's trial counsel ineffective for two reasons: (1) failing to object to a faulty jury instruction; and (2) advising Goldy not to testify after an adverse evidentiary ruling. The district court ordered the conviction expunged. The present appeal followed.

**II.**

We review a district court's legal conclusions in a habeas petition *de novo*, and we review factual findings for clear error. *Miller v. Webb*, 385 F.3d 666, 671 (6th Cir. 2004). In analyzing an ineffective assistance claim, "we evaluate the totality of the evidence - 'both that adduced at trial, and the evidence adduced in the habeas proceeding[s].'" *Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000) (emphasis omitted)).

No. 08-1646
*Goldy v. Tierney, et al.*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Goldy's

application for habeas corpus relief cannot be granted with respect to any claim adjudicated

on the merits in state court proceedings unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision involves an unreasonable application of clearly

established Supreme Court precedent when it correctly identifies the governing legal

principle but applies that principle in an objectively unreasonable manner.  *Williams*, 529

U.S. at 407-09.

Our review of Goldy's ineffective assistance claim is governed by the familiar two-

prong test of *Strickland v. Washington*, 466 U.S. 668 (1984).  Goldy must first show that his

trial counsel's representation "fell below an objective standard of reasonableness."  *Id.* at

688.  Our inquiry must be whether his attorney's performance was "reasonable considering

all the circumstances," and we "should recognize that counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment."  *Id.* at 688, 690.  Second, Goldy "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

3

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.

Michigan Compiled Laws § 750.224(1)(b) prohibits possession of a silencer. "Silencer" is defined in material part as, "A device for muffling, silencing, or deadening the report of a firearm." Mich. Comp. Laws § 750.224(4)(a). In his opening statement, trial counsel argued Goldy's position that the device in question was not a silencer but rather "a barrel extender, which . . . is part of the conversion kit that transforms a pistol into a rifle." Counsel further informed the jurors that Goldy "does intend to testify," and he outlined the expected content of that testimony.

Prior to opening statements, the judge addressed defense counsel's objection to the potential testimony of Goldy's former coworker Eric White.

| [Defense Counsel]: | . . . [I]t's my understanding there's going to be testimony that Eric White . . . met him in a parking lot . . . . He claims that this gun that they're calling – where it has, they claim it's a silencer – that my client took it out and shot it in the parking lot and it sounded quieter than a pebble gun. And I think they want to introduce testimony relative to that. . . . |
| --- | --- |
| The Court: | . . . Are you planning to call Mr. White? |
| [Prosecution]: | Yes. In fact – |
| The Court: | What are you calling him for? |

| | |
|---|---|
| [Prosecution]: | Well, he would provide information that the defendant has in the past been in possession of a silencer. He's saying that this is a barrel extender. |
| . . . | |
| The Court: | – I guess whether he's been, in the past, in possession of a silencer hasn't got anything to do with this particular case here. |
| . . . | |
| The Court: | [To Prosecutor] . . . with all due respect, I don't see whether he may have owned one in the past is more prejudicial than probative [sic]. It doesn't go to the issue of this particular item . . . . |

Although this interplay did not result in a definitive ruling from the bench, the clear implication is that White would not be allowed to testify. We note that our review of this exchange in its entirety does not make clear every parameter of White's intended testimony, as several statements were interrupted midsentence in the rapid dialogue between the judge and the attorneys.

Later in the trial, Goldy's counsel again expressed concern regarding White.

| | |
|---|---|
| [Defense Counsel]: | Eric White . . . he's the one that says that Mr. Goldy and him were in the parking lot and he shot this - that barrel extender in [sic] parking lot. . . . |
| The Court: | I've already said I thought that was irrelevant. |
| [Defense Counsel]: | But every time I go into it a little bit . . . then I'm told that I opened the door. I'm trying to keep it out . . . |

The Court:            Well, if your client is going to say he never shot the gun with that on it . . .

[Defense Counsel]:  I'm not going to have him say that.

The Court:            And if he testified to that, then definitely that witness becomes important.

. . .

The Court:            If your client denies firing that gun with that item attached to it, then this guy's testimony becomes pertinent.

. . .

[Prosecution]:        I'm going to ask Mr. White – I'm going to ask, if he [Goldy] testifies, which is his right to do or not to do, I'm going to ask him on May 20 do you recall being with Eric White and firing that weapon with . . . this item on it, and if he says yes, he says yes.  If he says no . . .

The Court:            If he says no, then Mr. White testifies.

. . .

[Defense Counsel]:  . . . Your Honor, that's more prejudicial . . .

The Court:            No, it's not, at that point it's his credibility . . .

Again, our review of this exchange in its totality does not make clear the full scope of

White's intended testimony, as the prosecution's explanation was again cut off midsentence.

At the district court hearing, both Goldy and his trial counsel testified that the ruling

regarding White caused them to decide not to put Goldy on the stand.  Goldy stated that he

"absolutely" wanted to testify but followed counsel's advice not to do so in order to exclude

White. In response to questioning by Goldy's appellate attorney, trial counsel also testified

that he was aware White would testify that Goldy referred to the device as "a silencer."

Counsel further confirmed his understanding that the prosecution intended "to ask him about

whether or not Mr. Goldy ever shot that and whether they ever talked about it being a

silencer." In response to additional questioning from appellate counsel, Goldy's trial attorney

affirmed that he "obviously anticipated that this [White's testimony] was going to be a

problem."[1]

The state court of appeals did not squarely address the issue of White's testimony but

stated generally that Goldy's decision not to testify was the "sort of strategic decision . . . that

we do not second guess." *See People v. Goldy*, No. 246501, 2004 WL 1392404, at *3 (Mich.

Ct. App. June 22, 2004). We therefore apply modified AEDPA deference, focusing on "the

result reached not the reasoning used." *See Hawkins v. Coyle*, 547 F.3d 540, 546-47 (6th Cir.

2008).

The state court did not unreasonably apply *Strickland* to Goldy's decision not to

testify. Goldy's counsel was aware that White would testify that Goldy knew the device at

---

[1] As further evidence that Goldy's decision not to testify was a joint strategy, trial counsel responded affirmatively when asked by appellate counsel, "And you felt that if Mr. White came in, it would be damaging. He [Goldy] agreed. And you jointly – you recommended he not take the stand, and he followed that advice willingly. Is that a fair statement?"

issue was a silencer. That testimony would be damning, since Goldy had maintained that he viewed the device as only a "barrel extender." It follows that White's testimony would have likely been admissible to show knowledge or absence of mistake. *See* Mich. R. Evid. 404(b)(1). Although the prosecuting attorney was generally cut off whenever he tried to explain the purpose of White's testimony, Goldy's counsel should have been aware of the lurking danger, and thus could reasonably advise Goldy not to take the stand.

The district court observed that "it is reasonably probable that, if presented with Rule 608(b) and his prior ruling, the trial court would have ruled that White's testimony could not be used to impeach Petitioner on [a] collateral matter." *Goldy v. Tierney*, 548 F. Supp. 2d 422, 428 (E.D. Mich. 2008). It is, however, also reasonably probable that, if presented with Rule 404(b), the trial judge would have considered White's testimony and deemed it relevant to show knowledge or absence of mistake. "Counsel's strategy choice was well within the range of professionally reasonable judgments," *Strickland*, 466 U.S. at 699, and Goldy has not overcome the presumption that his attorney's decision was sound trial strategy. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.

Trial counsel made a strategic decision to advise Goldy not to testify because counsel predicted that the value would be outweighed by the damage of White's impeachment testimony. That assistance was constitutionally adequate under *Strickland*. Although the

8

Michigan Court of Appeals did not fully address this claim, its application of *Strickland* was not objectively unreasonable.

## IV.

Goldy also argues that his trial counsel was ineffective in not objecting to a jury instruction on the silencer charge that inadequately conveyed the *mens rea* of the offense. Consistent with the Michigan Standard Jury Instructions, the trial court charged the jury as follows:

> Now, the defendant is also charged with the crime of possessing a muffler or silencer. A muffler or silencer is a device for deadening or muffling the sound of a firing gun. Now, to prove this charge, the prosecution must prove each of the following elements beyond a reasonable doubt. And there's just two.
>
> First, that the defendant knowingly possessed a muffler or silencer.
>
> And second, that at the time he possessed it, the defendant knew that the muffler or silencer was a weapon.

Goldy contends, and the district court agreed, that this pattern charge does not "require[] the prosecution to prove that Petitioner was aware of 'the features' of the device alleged to be a silencer 'that brought it within the scope of' M.C.L. 750.224." *Goldy v. Tierney*, 548 F. Supp. 2d at 430 (quoting *Staples v. United States*, 511 U.S. 600, 619 (1994)).

The state court of appeals held that Goldy waived this argument because he did not object to the charge. *People v. Goldy*, No. 246501, 2004 WL 1392404, at *3 (Mich. Ct. App. June 22, 2004). The appellate court further commented, however, that "the general

9

instruction that was given without objection was sufficient to inform the jurors of the elements of the offense." *Id.* at 2. The state court result was not an unreasonable application of *Strickland*.

Michigan Compiled Laws § 750.224(1)(b) prohibits possession of a silencer, defined in material part as, "A device *for* muffling, silencing, or deadening the report of a firearm." Mich. Comp. Laws § 750.224(4)(a) (emphasis added). That definition ("A device for ...") was incorporated in the jury instructions. As Goldy himself points out in his appellate briefing, "The word 'for' connotes intent." *See Lawson ex rel. Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 165 (3d Cir. 2002); *see also Goldy v. Tierney* 548 F. Supp. 2d 422, 429 (E.D. Mich. 2008) ("Petitioner argues that the use of the word 'for' connotes intent."). Therefore, the jury was required to find that Goldy knowingly possessed a device intended to deaden or muffle the sound of a firing gun. The jury instruction therefore adequately conveyed the necessary *mens rea*, and the state court's conclusion that defense counsel met constitutional standards was thus a reasonable application of Supreme Court precedent.

## V.

As explained herein, Goldy's state court proceedings did not result in a decision that was contrary to or an unreasonable application of Supreme Court law. We accordingly reverse the decision of the district court.

**CLAY, Circuit Judge, dissenting.** Goldy's trial counsel rendered ineffective assistance by failing to object to the trial court's obviously incorrect ruling that Eric White's testimony was admissible to impeach Goldy's answers on cross-examination. On that basis, I would affirm the district court and grant Goldy's habeas petition.

As an initial matter, the majority applies an incorrect standard of review to this claim. Because the state court of appeals did not address the specific argument Goldy raised, AEDPA deference does not apply. "Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an adjudication on the merits. Thus, a federal habeas court reviews such unaddressed claims *de novo*." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005) (quotations and citation omitted). The district court correctly found that the state court of appeals failed to address this issue on review. The state court mistakenly believed Goldy's claim was that his counsel was ineffective for initially telling jurors that Goldy would testify but subsequently failing to call Goldy. Goldy's actual claim was that his counsel did not object to the trial court's blatant error in ruling that White testimony was admissible, even though counsel knew that White's testimony would seriously undermine the defense's trial strategy. As Goldy stated in his appellate brief to the state court of appeals: "Trial counsel did not even *attempt* to point out the error in the trial court's suggestion that the prosecution would be permitted to open the door to the admission of testimony regarding the evidence which it had

previously ruled either 'irrelevant' or inadmissible on the basis of M.R.E. 404(b), much less register an objection to it." (J.A. at 101.)

The majority acknowledges that "the state court of appeals did not squarely address the issue of White's testimony," but then applies "modified AEDPA deference, focusing on 'the result reached not the reasoning used.'" *Majority Op.* at 7 (quoting *Hawkins v. Coyle*, 547 F.3d 540, 546-47 (6th Cir. 2008)). In *Hawkins*, this Court found that the state court had understood the petitioner's ineffective assistance claim, but had rejected the merits of the claim "summarily." 547 F.3d at 547. Because the state court rejected the claim without providing any reasoning, this Court conducted an independent review of the record and applicable law, but stated it would uphold the state's decision as long as the outcome was not contrary to or an unreasonable application of clearly established law. *Id.* In contrast, the state court int he instant case clearly did not understand the substance of Goldy's claim, despite the straightforward manner in which Goldy presented it. Because the state court did not reach any conclusion, reasoned or otherwise, concerning the actual claim raised by Goldy, this Court should have reviewed the merits of the claim *de novo,* instead of with modified deference. Reviewing the claim *de novo*, I would uphold the district court's decision to grant Goldy's habeas petition with respect to that claim.

White was expected to testify that he had seen Goldy fire his gun with a barrel attachment on it approximately two months before he was arrested, and that Goldy had

referred to the attachment at that time as a silencer. Before the start of trial, the trial judge

ruled that White's testimony was irrelevant as to whether Goldy possessed a silencer on July

23, 2001, specifically stating, "I guess whether he's been, in the past, in possession of a

silencer hasn't got anything to do with this particular case here." (J.A. at 218-19.) The court

also stated that White's testimony would be more prejudicial than probative. On the second

day of trial, Goldy's counsel sought clarification on whether Goldy would be opening the

door to White's testimony if, on cross-examination, the prosecutor asked Goldy if he had

used a silencer when he was with White. Without citing any rules of evidence or case law,

the court responded that "[i]f your client denies firing that gun with that item attached to it,

then [White]'s testimony becomes pertinent." (J.A. at 183.) Having previously ruled that

there was nothing probative about White's testimony, the judge was now clearly ruling that

White's testimony could be admitted to impeach Goldy testimony on cross-examination

regarding a matter that would not have been raised on direct.

Pursuant to M.R.E. 608(b), "[s]pecific instances of the conduct of a witness, for the

purpose of attacking or supporting the witness' credibility, other than conviction of crime as

provided in Rule 609, may not be proved by extrinsic evidence." Thus, under Michigan law,

"the prosecutor may not elicit a denial during the cross-examination of a defense witness and

then use that denial to inject a new issue into the case." *People v. Sutherland*, 385 N.W.2d

637, 639 (Mich. Ct. App. 1985). Though Michigan courts have found exceptions to this rule

13

where the extrinsic evidence impeaches a defendant on "matters closely bearing on defendant's guilt or innocence," *People v. LeBlanc*, 640 N.W.2d 246, 254 (Mich. 2002) (quotations and citation omitted), the trial court in this case had already ruled that White's testimony was not an example of such evidence.

Thus, although White's testimony was inadmissible to impeach Goldy, impeachment would have been the only purpose of the testimony, as both the prosecution and the trial court acknowledged at the time. The majority's assumptions about what the prosecutor might have argued, had the trial court given him the chance to argue further, are therefore irrelevant; the court had already been quite clear that it viewed White's testimony as irrelevant, other than for impeachment purposes.

The judge's ruling that White's testimony would be admissible if Goldy took the stand was therefore a clear error of law. Nevertheless, Goldy's counsel did not cite Rule 608(b), and instead argued somewhat incoherently that White's testimony would be prejudicial. In view of the basic mistake the trial judge made, it is likely that, had Goldy's counsel cited M.R.E. 608(b), the court would have properly excluded White's testimony. During Goldy's evidentiary hearing before the district court, Goldy's trial counsel testified that he had no strategic reason for failing to cite Rule 608(b) or to present pertinent case law to argue that White's testimony was inadmissible for impeachment purposes. Goldy's counsel therefore performed deficiently.

A mistake in failing to object to an evidentiary ruling normally might not be such a monumental error as to affect the outcome of a trial. However, in this case, the failure of Goldy's counsel to press the issue caused Goldy prejudice, inasmuch as Goldy's entire case appeared to hinge on his testifying.

To understand the importance of Goldy's testimony to his defense, it is worth recounting the evidence introduced at trial. Detective Dave Loe, the arresting officer, testified that he found the semi-automatic weapon in a closed gun case wrapped in a blanket in Goldy's trunk, with a magazine containing ammunition inside the gun. However, a photograph of the gun in the trunk shows the magazine outside the gun; Detective Loe explained that he removed the magazine before taking the photograph. Detective Loe testified that Goldy had told him that he was taking the gun to a shop for repairs. He asked Goldy why the magazine was inside the gun, and Goldy responded that he had to put it inside the gun in order to fit the gun in the gun case and close the case. At Goldy's home, Detective Loe found several weapons, all legally owned, including a pistol that contained what Detective Loe called a "barrel modification" attached to it. Goldy had told him the device was an "extender," but Detective Loe believed that it was a silencer. (J.A. at 266.)

Both the prosecution and the defense called firearms experts who offered disputing testimony about whether Goldy's extender constituted a silencer, or was capable of significantly muffling the sound of a gunshot. The defense's expert questioned Detective

15

Loe's version of events, stating that it was unusual for a police officer to take a magazine out of a gun before photographing the gun as evidence. Another witness for the defense corroborated Goldy's statement that he was taking the gun for repairs; the witness testified that he had been shooting with Goldy three days before Goldy's arrest, and that Goldy's gun had been jamming. The witness testified that he saw Goldy put the gun, unloaded, into a case and put the case into his trunk.

Because the evidence against Goldy was so weak–the silencer charge essentially boiled down to a battle of experts, and the evidence that the gun in Goldy's trunk was loaded was based entirely on Detective Loe's testimony–Goldy's testimony could have changed the outcome of the entire trial. During the district court's evidentiary hearing on Goldy's habeas petition, Goldy's trial counsel testified that Goldy had informed him prior to trial that the gun in his car was unloaded, and that he never intended the barrel attachment found in his home to be used as a silencer. Goldy's trial counsel also stated that Goldy possessed a receipt for the attachment, which called the attachment a "conversion kit" and not a silencer; he stated that he would have introduced the receipt as evidence of Goldy's belief that the extension was not a silencer, but needed Goldy to testify in order to introduce the receipt into evidence. (J.A. at 341.) Goldy's trial counsel acknowledged that without Goldy's testimony, Detective Loe's testimony that Goldy had acknowledged that the magazine was inside the gun was unrebutted. Further, the district court made a factual finding, having listened to Goldy's

testimony during the evidentiary hearing, that Goldy would have been a strong witness and that the jury could have found him credible. This Court must accept these factual findings because they are not clearly erroneous. *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).

Goldy's testimony could have led to a different outcome with respect to both charges, and Goldy's trial counsel testified that the reason he advised Goldy not to testify was out of fear of White's impeachment testimony. Whether or not it was wise to advise Goldy not to testify, such a difficult decision would have been unnecessary if Goldy's trial counsel had responded effectively to the court's decision to admit White's testimony. While the court's evidentiary ruling was probably one of a number of matters Goldy's trial counsel had to juggle simultaneously at trial, his recognition that Goldy's testimony was crucial should have led him to be prepared in the event the court ruled as it did–particularly since Goldy's counsel was the one who raised the issue with the court in the first place. The decision to recommend that the defendant testify is one of the most important decisions any defense counsel has to make, and once Goldy's trial counsel made the decision that Goldy needed to testify, he had a duty to ensure that an obviously incorrect legal ruling did not prevent Goldy from doing so. I therefore respectfully dissent.